This case is the product of unusual aspects. The predicate for it was an information charging appellant, a woman with one leg, perambulating on crutches, with murder in the second degree. At the trial she was convicted of manslaughter. The victim C.B. Nash, was a man six feet tall, weighing over 200 pounds. A motion for new trial was denied, a sentence of three years in the State penitentiary was imposed and the defendant appeals from that judgment.
The sole question for determination turns on the sufficiency of the evidence to support the judgment.
Appellant lived at 2218 Emma Street in Tampa. Nash and defendant had lived together in her home for years minus the benefit of a marriage ceremony. The deceased had a trailer parked on a vacant lot several hundred feet east of appellant's home where he took refuge when domestic cyclones were brewing. He was lodging there the night he was killed, appellant being the only eye witness to the tragedy. Her story as to how it took place was to the effect that when she returned home late at night from a nearby store where she went for groceries, she proceeded to Nash's trailer and knocked on the door. He had apparently gone to bed but got up and let her in. A heated controversy apparently flared up, the end result of which was that he knocked her down with a lamp and every time she attempted to get up he knocked her down again. After being knocked down several times she lost her crutches and crawled up on a bunk in the trailer. He forthwith struck her in the eye and broke her glasses. He choked her repeatedly and exclaimed "you old son-of-a-bitch I ought to kill you."
It is not inappropriate to point out that a great many bearing this rustic title have made their way to this Court seeking recompense for injury to their "person or reputation" but none were clothed in female trappings. This is the first time a "she" son-of-a-bitch has rapped at our door with a prayer on her lips for justice, but the fact that one who has acquired this low-born title may approach the temple of justice with the same assurance as one from the "upper crust" is the attribute that intensifies our devotion to it and makes us willing to sacrifice life and goods to keep it.
To cap this blast or name calling the parties reached for a shot gun standing nearby. A struggle for its possession ensued, during which it was discharged and the load entered Nash's side. Appellant hobbled and crawled to a neighbor's not far away who called an ambulance to carry Nash to the hospital but he died before relief came. Several deputy sheriffs arrived on the spot and questioned appellant, after which she was arrested, and placed in jail. The primary evidence against her was that she made certain statements about her encounter with the deceased at the time she was taken in custody and then told a different story when she testified at the trial. There was evidence that her hand was on the stock when the gun was discharged but she said that she was not conscious of having pulled the trigger or that any effort on her part caused the gun to discharge. There is no direct evidence as to who pulled the trigger, whether the gun was discharged from a jar or from other means. So far as the record discloses either of them may have caused it to discharge, or both may have had a part in it.
From this state of the evidence there is no support for the verdict but a presumption that defendant committed the act which caused the gun to discharge. It would be as reasonable to presume that the deceased or some other agency caused it. The deceased had much the advantage of defendant in a personal combat and there is no evidence showing that her act caused the gun to discharge. The fact that appellant survived a row like this is not sufficient to convict her. There must be evidence proving the offense charged or which points conclusively to defendant as the guilty party, otherwise the judgment should not be permitted to stand. Pollard v. State, *Page 181 61 Fla. 44, 55 So. 380; Crawford v. State, 85 Fla. 498, 96 So. 837; Bloodgood v. State, 94 Fla. 639, 114 So. 528.
A careful study of the evidence leaves one in grave doubt as to who was responsible for the homicide. The judgment is therefore reversed and a new trial awarded.
Reversed.
ADAMS, C.J., and THOMAS and ROBERTS, JJ., concur.