JAKE SOLOMON, BEN MACK and HARRY LEEDS, alias DAVE BYERS, v. STATE.

156 So. 401.
Division B.
Opinion Filed February 27, 1934.
Opinion on Rehearing Filed June 7, 1934.

*Bart A. Riley* and *J. Aron Abbott,* for Plaintiffs in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

BUFORD, J.—This case is before us on writ of error to judgment of conviction against the plaintiffs in error under an information in two counts. The first count charged them with the offense of maintaining and operating a gambling room. The second count charged them with the offense of keeping and maintaining certain gaming implements and apparatus * * * for the purpose of gaming and gambling. All except Ben Mack were convicted under both counts and Ben Mack was convicted under the second count only.

On the trial it was shown that a deputy sheriff and a police officer broke and entered into a room where plaintiffs in error and other persons were congregated. In this room

there were five telephones, some horse race charts, scratch sheets, betting sheets and tickets. The officers were unable to testify that any gambling was being conducted in the room or with the implements and apparatus at the time they with force and violence entered the room.

The chief attack in this case is centered upon the validity of Section 5506 R. G. S., 7664 C. G. L., but the record in the case is such that we are not required to pass upon the question as to whether or not this section of the statute is valid or invalid.

The evidence upon which the State relied for conviction was entirely circumstantial and, therefore, the rule applicable is that the evidence as a whole must be so strong, cogent and convincing as to exclude every reasonable hypothesis except the guilt of the accused.

The evidence is that the deputy sheriff and police officer heard the telephones clicking and ringing and that they heard some conversations over the telephones, but they did not know what those conversations were about, nor did they know who was doing the talking at the other end of the line. The evidence was sufficient to create a very substantial suspicion that the plaintiffs in error were operating some sort of gambling enterprise in the room, but the rule is well settled that one charged with a criminal offense cannot be convicted on guess work and suspicion.

The implements and apparatus described in the information were seized by the officers at the time they entered the room without being armed with a search warrant. Inasmuch as the officers were unable to say that any crime was being committed when they entered the room, there can be no question that the seizure was in violation of Section 22 of the Declaration of Rights of the State of Florida and

the Fourth Amendment of the Constitution of the United States.

The evidence shows that the paraphernalia offered in evidence was unlawfully seized and, therefore, its being admitted in evidence was error.

If, however, the paraphernalia and evidence in connection therewith had all been legally obtained and properly admitted, there was still not sufficient evidence either to show that the room was maintained or operated by either of the plaintiffs in error as a gambling room or that the implements and apparatus were kept or maintained by either of the plaintiffs in error for the *purpose* of gaming or gambling.

For the reasons stated, the judgment should be reversed and it is so ordered.

Reversed.

WHITFIELD, ELLIS and TERRELL, J. J., concur.

DAVIS, C. J., concurs specially.

DAVIS, C. J. (concurring.—Chapter 7664 C. G. L., 5506 R. G. S., reads as follows:

"If any sheriff, city marshal or chief of police has good reason to believe that gambling is being carried on in any house or other place, he may enter the same forcibly, if necessary, and without written warrant, and may arrest any person violating the provisions of this Article."

My view is that the above quoted statute must be strictly construed, indeed, as strictly construed as this Court has construed Section 7177 C. G. L., 5075 R. G. S., wherein this Court was called upon to construe a statute that vested certain extraordinary powers in a sheriff, deputy sheriff, constable, justice of the peace, mayor or alderman to go among persons unlawfully assembled and command them

to disperse, in violation of which command, a presumptive criminal responsibility would attach for disobeying the officer's orders. In Lezema v. State, 110 Fla. 230, 148 So. Rep. 304, this Court construed the statute strictly and held that since lieutenant of police was not named in the statute, no criminal liability would attach for mere failure to heed an admonition given by him, which if it had been given by one of the named officers, would have fixed such criminal liability.

Section 7664 C. G. L., 5506 R. G. S., names only the sheriff, city marshal or chief of police as being vested with the extraordinary authority of law to forcibly enter, without warrant, a house or other place wherein they have good reason to believe gambling is being carried on. The situation involved in the recent decision of this Court in Swenson v. Cahoon, 111 Fla. 788, 152 Sou. Rep. 203 (opinion filed September 12, 1933), affords a good illustration why the statute may have contemplated the personal presence of the sheriff, marshal or chief of police himself as the only justification for exercising authority to break and enter a gambling house without warrant. In the Swenson case it was held that the act of a deputy sheriff in usurping the power to make an unlawful arrest without warrant did not *per se* render the sheriff himself liable on his official bond.

I have little doubt that the language of Section 7764 C. G. L., *supra,* was used advisedly and was intended to require the sheriff himself to be present and to personally supervise the execution of the unusual and highly extraordinary powers conferred upon the particularly named officers who are vested by Section 7664 C. G. L., *supra,* with power to enter not only place of business, but "any house" wherever there is merely "good reason to believe" that gambling is being carried on.

In my judgment, the statute vests in the sheriff, marshal or chief of police in person, the powers thereby conferred. It does not vest such power, nor the judgment and discretion necessarily involved, in any deputy sheriff, policeman or other officer not so named. While there is no doubt as to the lawful right of deputies and other officers to be present at the request or direction of the sheriff if such sheriff be present as the responsible officer, undertaking to carry out a gambling house raid, when the sheriff himself decides to make one under Section 7664 C. G. L., *supra,* the power thus exercised by the sheriff, is a delegated one of highly oppressive character, and is within the scope of the maxim, *"delegata potestas non delegari."* In my opinion, the legal maxim just cited applies to any attempt of a deputy sheriff to exercise the power given by Section 7664 C. G. L., only to the sheriff. Such was the case here. See Lezema v. State, *supra.*

I therefore concur in reversal, but solely on the ground that I think the raid, having been made in the absence of the sheriff, by his deputies, cannot afford a legal predicate for the use in evidence of the incriminating articles and gambling paraphernalia seized under Section 7664 C. G. L., hence the conviction based largely on such illegally obtained evidence, is itself illegal..

WHITFIELD, ELLIS, TERRELL and BUFORD, J. J., concur.

## ON REHEARING.

PER CURIAM.—This case is before us on rehearing granted after opinions and judgment filed and entered herein on February 27th, 1934, and after considering additional briefs filed and hearing and considering argument of counsel presented pursuant to the granting of rehearing.

It is considered by the Court that the said opinions and judgment filed and entered in this cause on February 27th, 1934, should now be adhered to and that the judgment to which writ of error was directed do stand reversed.

It is so ordered.

Judgment of reversal adhered to on rehearing.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur.

ELLIS and TERRELL, J. J., concur in the opinion and judgment.

DAVIS, C. J., concurs specially.

DAVIS, C. J. (concurring).—Section 7664 C. G. L., 5506 R. G. S., is as follows:

"If any sheriff, city marshal or chief of police has good reason to believe that gambling is being carried on in any house or other place, he may enter the same forcibly, if necessary, and without written warrant, and may arrest any person violating the provisions of this Article."

Under Section 7666 C. G. L., 5508 R. G. S., *gambling* is defined as follows:

"Whoever plays or engages in any game at cards, keno, roulette, faro or other game of chance, at any place, by any device whatever, for money or other thing of value, shall be punished by imprisonment not exceeding ninety days, or by fine not exceeding one hundred dollars. (Amended by Ch. 4514, Acts 1895, Sec. 1.)"

So it is obvious that Section 7664 C. G. L., *supra,* is so broad that it would apply to the attempted act of any sheriff, city marshal or chief of police who, having conceived that he has good reason to believe that "gambling"—the misdemeanor (not felony) denounced by Section 7666 C. G. L., *supra,* is being committed in any house (including a dwell-

ing house) either in the day time or in the night time, de-cides to enter such dwelling house *by force* and *without warrant* on such suspicion.

The *common law* rights, duties and powers of deputy sheriffs concerning the apprehension of felons are not in any respect involved in this case.

In this case we are undertaking to construe Section 7664 C. G. L., *supra,* not the rights of officers under the common law. The statute under consideration covers misdemeanors as well as felonies—at least it is not limited to that form of gambling carried on in houses which the law has denominated as felonies. The statute refers merely to "gambling."

We must therefore construe strictly a statute which undertakes to declare that it is a reasonable investiture of the State's police power for certain named officers to have authority to enter *without warrant* either in the day time or in the night time, houses, clubs, hotel rooms, etc., on a mere suspicion that a game of cards or other such similar acknowledged universal indoor sport is being played therein in violation of a statute making such playing of cards for money a mere misdemeanor punishable by a fine not exceeding $100.00 or imprisonment not exceeding ninety days.

Delegated authority to officers to forcibly enter houses and other places *without* warrant, both in the day time and in the night time, on what amounts simply to a substantial suspicion on the officer's part that the commission of a mere misdemeanor is going on therein, amounts to the exercise of a high prerogative power of government. If it lies within the province of the Legislature at all to delegate to non-judicial officers the authority to make a preliminary determination that probable cause exists for the forcible invasion of a citizen's constitutional rights of privacy and

security in order to enforce a minor police regulation, the Act of the Legislature which undertakes to vest such authority in mere police or peace officers should be strictly construed—at least as strictly construed as was the statute considered recently by this Court in the case of Lezema v. State, 110 Fla. 230, 148 Sou. Rep. 304.

Section 22 of the Declaration of Rights set forth in the Constitution of this State is an express limitation not only upon the Legislature, but upon the power of our constituted State government itself, to violate the inherent right of every free people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, with or without force. Organized society created government—not government society. And it seems that the Legislature must have had this principle somewhat in mind when it undertook to declare not to be unreasonable, and therefore authorized by law, a forcible intrusion into the houses of those citizens whom certain designated officials might have good reason to believe were committing the misdemeanor of gambling therein. It seems plain that the statute specifically delegated authority for that purpose only to those peace officers who were the heads of their respective departments, because their identity as officers would likely be better known to citizens required to open their private places to them or suffer a forcible entry by violence. In addition their status as officers in our law enforcement system might suggest the possession on their part of a higher degree of intelligence, discretion and qualification for the making of the determination of what was "good reason to believe" than the ordinary peace officer is supposed to have.

I am not unmindful of Section 4578 C. G. L., 2881 R. G. S., which reads as follows:

"Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible. (Ch. 1659, Aug. 6, 1868, Sec. 4.)"

But this Court has already committed itself to the proposition that the foregoing section does not confer on a deputy sheriff any right to exercise a *non*-delegable prerogative governmental power vested alone in the sheriff, such for example, as the power to appoint a deputy. Guarantee Trust & Safe Deposit Co. v. Buddington, 23 Fla. 514, 2 Sou. Rep. 885.

I am equally certain the Section 4578 C. G. L., *supra,* even when construed in connection with Section 7664 C. G. L., is subject to the same implied limitation against any authority being in a deputy sheriff to exercise that essentially non-delegable high prerogative governmental power vested by statute specifically in the sheriff alone, such as the power of deciding whether the factual jurisdictional prerequisite to forcible entry into private houses exists under Section 7664 C. G. L., *supra,* before forcible entry is attempted.

Such holding is no hindrance to proper law enforcement. It simply means that where an officer other than the three officers named in Section 7664 C. G. L., and specifically privileged to act without warrant, shall decide that there is a good reason to believe that gambling is being carried on in a private house or other place, he must secure advance judicial approbation of his suspicions in the form of a warrant before he can enter by strong arm with a multitude of people into those places which the Constitution says shall be secure against all *unreasonable* violations of privacy.

If the supposed pressing necessity for invasions of this kind *without* warrant is not real enough to appeal to the attention of the high sheriff himself, it would seem *per se* unreasonable to hold that the mere inconvenience to a deputy sheriff that would be caused by the annoyance of having to procure a warrant, must outweigh all the constitutional rights of the citizen to be secure against forcible intrusions by those whom they would likely not readily know or recognize as officers of the law unless they could produce some official paper to prove it, such as a proper warrant of authority to enter.

Whatever rights deputy sheriffs may have at common law to act in cases where felonies are being committed or have been committed, are not touched on in the opinion of this Court as to which this rehearing has been granted. No statute was necessary to restate such rights. Section 7664 C. G. L., *supra,* obviously does not attempt to take away any officer's common law powers. On the contrary, its purpose is to enlarge those powers so as to take in all "gambling" whether misdemeanor or felony.

I therefore adhere to my previous opinion which was concurred in by a majority of the Court and filed herein on February 27, 1934.

BROWN, J., concurs.