DAYTON, Associate Justice
(dissenting)-
I am unable'to agree to the conclusions expressed in the majority opinion.
It is my view that absent any proof whatever that the seized'' paraphernalia was actually used in a gambling operation, its mere possession does not constitute substantial .evidence . upon which to base an order, suspending the hotel license of appellant.. It is my opinion, also, -that the “inspection” made by the officers in this case was in fact an unreasonable search and seizure in violation of the. rights of appellant under Section 22 of the Declaration of Rights of the Constitution of Florida, F.S.A., and the Fourth Amendment to the .Constitution of the United States.
The order of suspension was based upon a finding by the Hotel Commission that appellant had “ * * * permitted the maintenance of gambling implements or apparatus upon the licensed premises.” The gambling implements or ápparatus were a quantity of “Harvey A. Junior Sports Digest”, some “Reno” tickets and certain “run down sheets, scratch sheets and other paraphernalia CommOnly used in bookmaking operations.” ' It does not app'ear from the record that" the possession of a “Harvey A. Junior Sports Digest” is illegal. ;The record described the “Reno” tickets as .being several years old. The “run down sheets and scratch sheets” had figures written on them. The evidence is sufficient to create a strong suspicion of gambling activity upon the premises searched. However, it is not evidence which creates a suspicion that is “substantial evidence.”
“The rule as to substantiality is not different, we think, from, that to be applied .in reviewing the refusal to direct a verdict at law, where the lack of sub *358 stantial evidence is the test of the right to a directed verdict. In either case, substantial evidence is evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to do more than a scintilla or which gives equal support to inconsistent inferences.” Appalachian Electric Power Co. v. N.L.R.B., 4 Cir., 93 F.2d 985, 989. Cf. Pennsylvania R. Co. v. Chamberlain, 228 U.S. 333, 339, 343, 53 S.Ct. 391, 393, 394, 77 L.Ed. 819.
In Solomon v. State, 115 Fla. 310, 156 So. 401 this Court reviewed the evidence which formed the basis of a conviction on criminal charges where the officers entered without a search warrant and seized certain “race charts, scratch sheets, betting sheets, and tickets” although the officers were unable to testify that any gambling was being conducted in the room or with the implements and apparatus at the time they entered the room. This Court there said “The implements and apparatus described in the information were seized by the officers at the time they entered the room without being armed with a search warrant. Inasmuch as the officers were unable to say that any crime was being committed when they entered the room, there can be no question that the seizure was in violation of section 22 of the Declaration of Rights of the state of Florida [F.S.A.] and the Fourth Amendment of the Constitution of the United States.”
It is my opinion, therefore, that the possession of the described paraphernalia which is susceptible to the use of a bookmaking operation, absent any proof whatever that it was so used, is not substantial evidence of gambling.
It is abundantly clear to me that the sole purpose of this inspection was to raid the premises to obtain evidence of gambling. No explanation is given for the presence of two Assistant Attorneys General of Florida and two Deputy Sheriffs of Dade County to assist the two Deputy Hotel Commissioners in making an inspection of a twelve-room Negro hotel. It seems unlikely that a routine inspection of a small rooming house would require the presence of six men at public expense for that purpose.
Although the officers claimed the right to make the inspection conferred upon the Hotel Commission in the first paragraph of Section 511.11 Florida Statutes 1951, F.S.A., they ignored the duty imposed by the second paragraph of the same Section, to make a report of the inspection on a form provided by the Commission, and to post a copy of such report in the premises inspected. No attempt was made to comply with this latter provision.
The intent of the members of the inspection party is further demonstrated by the testimony of Deputy Hotel Commissioner Gasque, part of which appears in the record as follows:
“Q. It was your purpose to raid the hotel, was it not? A. It was my purpose to go in and see if there was any gambling in evidence in there, and if there was I was going to put somebody in jail.
The testimony of Assistant Attorney General John C. Reed on this point is also significant:
“Q. (By Mr. Swink) Mr. Reed, it is true, isn’t it, that for the purpose of yourself and the Sheriff’s Department and the Attorney General’s office to conduct an investigation at the Smith Hotel was to determine whether or not gambling was there, was it not? A. That’s right.
“Q. You did not go out there for the purpose of inspecting the premises because you were with the Hotel Commission? A. It was because we had information they were gambling.”
I am in accord with the observation of Mr. Justice TERRELL in his special concurring opinion that the difference between an inspection tour and a raid to catch gamblers as the objective of the *359 officers is important “ * * * because the latter requires a search warrant if one’s premises are to be searched.” That it was a search rather than an inspection as contemplated by Section 511.11 supra is apparent from the testimony of My. Reed who said that he “went through all the dresser drawers in Room 3”; that the “Reno” tickets were found “in the dresser” and certain other pieces of paper identified as Exhibit No. 8 were found in “either of three places, in the desk, the dresser, or the box.”
The evidence in behalf of the Commission shows that the rooms searched contained letters addressed to the licensee together with his clothing, shaving equipment, and other personal effects.
When the officers were halted by Smith they could have availed themselves of the • remedy for such situations provided by Section 511.41 Florida Statutes 1951, F. S.A., which Section makes it a misdemeanor punishable by fine or imprisonment for the manager or person in charge of the licensed premises sought to be inspected to hinder or interfere with a Deputy Hotel Commissioner in the performance of his duties. There is nothing in the record here to indicate that the officers in this case sought the remedy provided by the above Section.
There is no question that the interest of the public welfare requires the regular inspection of hotels, rooming houses, apartment houses and restaurants. There is likewise no question that the preservation of our organized and orderly society requires that police officers must wage a continuing battle against the forces of organized crime. Some flexibility of judgment on the part of such officers is necessary and to this end the language of Section 22 of the Declaration of Rights of the Florida Constitution, F.S.A., and the Fourth Amendment to the Constitution of the United States is significant in that it is only unreasonable searches and seizures that are prohibited. United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 435, 94 L.Ed. 653.
“ * * . * the relevant test; is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances — the total atmosphere of the case.” United States v. Rabinowitz,, supra.
The purpose of requiring a search warrant before officers of the law may search one’s premises is not to shield criminals nor to make the home a safe haven for criminal activity, but to place between the police officer and the citizen the objective mind of a magistrate in order that the need to invade one’s privacy may be weighed against the necessity to enforce the law. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153.
This Court has held that a statute which purports to delegate to certain officers authority to enter certain premises without a search warrant must be strictly construed. Solomon v. State, supra. The statement of this Court, in Re Advisory Opinion to the Governor, Fla., 63 So.2d 321, 325, that the Hotel Commissioner “has the authority to go upon the premises of the place of business of such establishments and inspect them without search warrant or other authority of law for the purpose of determining whether or not any law with reference to the same, and also the gambling laws, are being violated” in my opinion does not, and indeed cannot, confer upon the Hotel Commissioner any authority to exceed the limitations against unreasonable searches and seizures imposed by the State and Federal Constitutions.
The statute which delegates to the State Hotel Commissioner authority to inspect hotels, apartment houses and restaurants “at any reasonable time”, in my opinion, must require that such inspection be made in a reasonable manner and that the inspecting officers be held to strict accountability not to exceed the limitations imposed by the State and Federal Constitutions.
Many people in Florida make their homes in hotels and. apartment houses. A rea *360 sonable inspection óf such premises for the proper enforcement of the requirements of law as to health and sanitary measures is essential:" It does not follow, however, that by choosing to dwell in a hotel or apartment house a citizen has forfeited his constitutional right to immunity from unreasonable searches and seizures, whether he be landlord or tenant, innkeeper or guest. The law which authorizes such inspection was not designed to provide a subterfuge whereby officers of the law can successfully circumvent the provisions of the State and Federal Constitutipns for the protection of a citizen’s right,to privacy.
• It is one thing for a state official to request admission to an apartment or hotel room at a reasonable time for the purpose of looking at the window screens, lighting fixtures, fire escapes, bathroom and sanitary facilities in order that the innkeeper may be graded upon the quality óf the accommodations and services provided by his establishment. If in the course of the proper performance of his duties such inspector observes evidence of gambling, such evidence is admissible to support a criminal charge against the individual or to furnish a basis for the revocation of his license. If the Deputy Hotel Commissioner is hindered or obstructed in the proper discharge "of his duties by the owner, manager, agent or person in charge of the licensed premises such person may be prosecuted as provided by Section 511.41 supra, and, in my opinion, such conduct on the part of the person in charge, of the premises sought to be inspected may properly furnish the basis for an order suspending or revoking the license -as provided by Section 511.05 Florida Statutes 1951, F.S.A., as being a violation óf the provisions of said Chapter 511.
It is something entirely different, however, when a group of. state officials permit one of their number to commit a physical assault upon a citizen and subject him to verbal abuse, then invade the privacy of his home and ransack his bureau and dresser drawers for the purpose of obtaining evidence of gambling. The test supplied by United States v. Rabinowitz, supra, should be applied here. In the light of thé facts, the circumstances and the atmosphere of the case, was the search reasonable? It is my considered opinion that in this case it was not.
For the reasons above expressed I feel that judgment of the lower Court should be reversed.