273 So.2d 84 (1973)
Donald GAETANO, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 72-455.
District Court of Appeal of Florida, Fourth District.
February 8, 1973.
Rehearing Denied March 5, 1973.
Max Lurie, of Lurie & Capuano, Miami, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Nelson E. Bailey, Asst. Atty. Gen., West Palm Beach, for appellee.
CROSS, Judge.
Appellant-defendant, Donald Gaetano, Jr., appeals a judgment and sentence following an adjudication of guilt in a nonjury trial on a charge of unlawfully keeping, exercising or maintaining a gambling house. We reverse.
The defendant was charged by information in count one thereof with bookmaking and in count two of the information with unlawfully keeping, exercising or maintaining a gambling house in Ft. Lauderdale, Florida. At trial, it was revealed that the defendant, who had been under observation for some time, was often seen entering the rear of a single family residence (later determined to be divided into two apartments). This house was suspected to be the location of a bookmaking operation. Police officers obtained a search warrant, entered the house and arrested the defendant. *85 In searching the house, the officers found and seized two copies of the New York Daily News racing results, some sheets of "water soluble" paper, a bucket filled with water and containing a white gelationous mass, a telephone, a bank loan payment book, Harvey Ames Clocker Handicap selections, one yellow pad, and pencils. During the time the house was being searched by the officers, there were four incoming telephone calls. The telephone calls were answered by one of the officers. Two of the callers were female and asked for "Don" and upon being told that he was busy, hung up. The third caller hung up without speaking immediately after the phone was answered, the fourth caller asked for a "line," and the officer gave the caller a made-up "line." Subsequently, the yellow pad seized in the search was delivered to the Dade County Crime Laboratory for reconstructing impressions made upon the paper of the yellow pad. The impressions as reconstructed revealed names of football teams with numbers after the team's name (e.g., Boston plus 16, minus 55/50, minus 50, etc.). There was no testimony establishing by whom or when the written impressions reconstructed from the yellow pad were made thereon.
At conclusion of the case, the defendant, having elected not to put on any testimony in his behalf, moved the trial court for a judgment of acquittal as to both counts of the information. The trial court granted the motion as to count one of the information (bookmaking), denied the motion as to count two of the information (keeping, etc., a gambling house), adjudged the defendant guilty as to count two, and sentenced the defendant to a term of imprisonment. It is from the judgment and sentence entered on count two of the information that the defendant appeals.
The thrust of the appeal is whether the evidence is legally sufficient to sustain the judgment and sentence.
When reviewing the sufficiency of the evidence, an appellate court must affirm the conclusion or decision of the trier of fact where there is substantial, reasonable evidence in support of the verdict, notwithstanding the fact that the court would have reached a different conclusion. Substantial evidence means more than mere suspicion, Smith v. State, 101 Fla. 1066, 132 So. 840 (1931), and there must be evidence that proves every essential element of the offense charged. Hurley v. State, 43 So.2d 179 (Fla. 1949); Stewart v. State, 158 Fla. 753, 30 So.2d 489 (1947); Smith v. State, supra.
In the case sub judice, the defendant was charged by information with the violation of Fla. Stat. § 849.01 (1969), F.S.A. That statute reads in pertinent part as follows:
"Whoever ... has, keeps, exercises or maintains a gaming table, or room, or gaming implements or apparatus, or house, ... for the purpose of gaming or gambling ... shall be punished... ." Fla. Stat. § 849.01 (1969), F.S.A.
To convict a person of keeping or maintaining a gambling house under the above statute, it must be proven, inter alia, that "some game or device condemned as gambling has been habitually played or carried on there. Creash v. State, 131 Fla. 111, 179 So. 149, 152; see Millman v. State, Fla. 1951, 55 So.2d 713; Grossman v. State, Fla. 1952, 59 So.2d 59." Stanger v. State, 117 So.2d 417, 418 (Fla.App. 1960); cf. Perlman v. State, 269 So.2d 385 (Fla. App. 1972). "Habitually" has been defined to mean customarily, Kelly v. Degelau, 244 Iowa 873, 58 N.W.2d 374.
In the instant case, the state was unable to show even one instance of gambling or of a bet being placed at the house allegedly maintained or kept as a place for gaming or gambling. The state was only able to show the presence of newspaper racing results, handicap sheets, water soluble paper, etc., and that one person asked for a "line." Such evidence is only circumstantial and *86 does not exclude every reasonable hypothesis of innocence, much less show that some game or device condemned as gambling has been habitually or customarily played or carried on there. See Solomon v. State, 115 Fla. 310, 156 So. 401 (1934).
Accordingly, the evidence being insufficient to support the judgment and sentence, the judgment is reversed and the sentence vacated and set aside with directions to dismiss the information and discharge the defendant, Donald Gaetano, Jr.
Reversed and remanded, with directions.
REED, C.J., and OWEN, J., concur.