397 So.2d 1120 (1981)
Delbert Lee TIBBS, Petitioner,
v.
STATE of Florida, Respondent.
No. 56918.
Supreme Court of Florida.
April 9, 1981.
Rehearing Denied June 3, 1981.
*1121 Louis R. Beller, Miami Beach, and Jerry Paul, Durham, N.C., for petitioner.
Jim Smith, Atty. Gen., Eula Tuttle Mason and Charles Corces, Jr., Asst. Attys. Gen., Tampa, for respondent.
PER CURIAM.
This case brings us the responsibility to delineate the occasions for retrial and discharge, respectively, of criminal defendants whose convictions have been reversed by Florida appellate courts. It arises from the decision of the Second District Court of Appeal in State v. Tibbs, 370 So.2d 386 (Fla.2d DCA 1979).

I
In Tibbs v. State, 337 So.2d 788 (Fla. 1976), we reversed the petitioner Delbert Tibbs' original conviction for rape and for first-degree murder, and we remanded for a new trial. On remand, the trial court granted Tibbs' motion to dismiss the indictment against him on the ground that retrial would violate the double jeopardy clause of the fifth amendment to the United States Constitution. The trial court based its dismissal on two intervening decisions of the United States Supreme Court  Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and Greene v. Massey, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). Burks had held that the double jeopardy clause prohibits retrial where an appellate court reverses a conviction on the ground that the evidence is insufficient, and Greene applied that newly-articulated constitutional principle to the states' judicial systems.
On appeal of the order directing Tibbs' discharge from prosecution, the Second District Court of Appeal reversed. After analyzing our opinion reversing Tibbs' convictions, the district court concluded that the principles enunciated in Burks and Greene would not bar Tibbs' retrial since our reversal *1122 was based on the weight, rather than the legal insufficiency, of the evidence. The district court based its decision on a long line of Florida cases ostensibly standing for the proposition that an appellate court can reverse a conviction when the evidence is technically sufficient but its weight so tenuous as to require a new trial in the interests of justice.
One day after the Second District's action, we decided McArthur v. Nourse, 369 So.2d 578 (Fla. 1979). As in the present case, McArthur's original conviction had been reversed and remanded for a new trial.[1] After analyzing the earlier opinion, we concluded that our reversal had been based on the insufficiency of the evidence, so that Burks and Greene operated to preclude McArthur's retrial. We expressly left open the double jeopardy implications of appellate reversals based on evidentiary weight, as opposed to sufficiency.[2]
Tibbs then filed a petition for rehearing in the district court alleging that McArthur should be applied in his case to bar further prosecution. The Second District denied rehearing, emphasizing once again its belief that Tibbs' reversal had been based on the weight of the evidence rather than its legal insufficiency.[3] After this denial, Tibbs brought his case to us for review.
We are asked by Tibbs to rule that our reversal of his original convictions was based on evidentiary insufficiency, not evidentiary weight. Beyond simply examining the foundation for our prior opinion as we did in McArthur, we perceive the need to explain the distinction between an appellate reversal based on evidentiary weight and one based on evidentiary insufficiency, and to determine whether that distinction, if one really exists, shall remain viable in Florida.

II
At the outset, we note that the distinction between an appellate reversal based on evidentiary weight and one based on evidentiary sufficiency was never of any consequence until Burks. In that case the Supreme Court ruled that the double jeopardy clause of the fifth amendment precluded retrial because an appellate reversal for insufficient evidence is essentially an acquittal. If a trial court holds the evidence insufficient, a judgment of acquittal will be entered and the defendant cannot be retried.[4] If should make no difference, the Court reasoned, that the appellate court rather than the trial court determined the evidence to be insufficient. In either situation, the government has failed to prove its case.[5]
The Court was careful to distinguish reversals for procedural errors in a trial, where double jeopardy does not bar retrial. In such cases, a reversal does not indicate that the government's case has failed, but simply that the judicial process leading to conviction was defective in some critical way. Retrial is appropriate since "the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished."[6]
After Burks, the double jeopardy implications of two categories of appellate reversal  reversals for insufficient evidence and reversals for trial error  are relatively clear. The district court, however, distinguished Burks by placing Tibbs' reversal in *1123 a third category: appellate reversals where the evidence is technically sufficient but its weight is so tenuous or insubstantial that a new trial is ordered in the interests of justice. While this third category of appellate reversals is often identified in Florida cases, both this Court in McArthur[7] and the United States Supreme Court in Greene[8] declined to rule on its double jeopardy implications. Without any guidance from either of us, the district court endeavored as best it could to find a place for the weight-sufficiency distinction in Florida's jurisprudence. It is no reflection on that court that we now take a somewhat different view of the matter.

III
The weight and the sufficiency of evidence are, in theory, two distinct concepts most often relevant at the trial court level. Sufficiency is a test of adequacy. Sufficient evidence is "such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded." Black's Law Dictionary 1285 (5th ed. 1979). In the criminal law, a finding that the evidence is legally insufficient means that the prosecution has failed to prove the defendant's guilt beyond a reasonable doubt. Burks v. United States, 437 U.S. 1, 16 n. 10, 98 S.Ct. 2141, 2150 n. 10, 57 L.Ed.2d 1 (1978). Weight, at least in theory, is a somewhat more subjective concept. The "weight of the evidence" is the "balance or preponderance of evidence." Black's Law Dictionary 1429 (5th ed. 1979). It is a determination of the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other. See In re Estate of Brackett, 109 So.2d 375 (Fla.2d DCA 1959).[9]
As a general proposition, an appellate court should not retry a case or reweigh conflicting evidence submitted to a jury or other trier of fact.[10] Rather, the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment.[11] Legal sufficiency alone, as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal.[12]

*1124 IV
The district court in this case reviewed a number of Florida appellate decisions reversing convictions on the alleged basis of evidentiary weight. Although the court's analysis is plausible, we prefer to view these ambiguous decisions as reversals which were based on sufficiency; that is, as cases in which the state failed to prove the defendant's guilt beyond a reasonable doubt. See Greene v. Massey, 437 U.S. 19, 25, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978).
The first decision cited by the district court was Williams v. State, 58 Fla. 138, 50 So. 749 (1909). In that case, the court stated: "After carefully weighing the evidence, we are irresistibly impelled to the conclusion that there was not sufficient evidence adduced to warrant the [guilty] verdict of the jury... ." 58 Fla. at 151-52, 50 So. at 754. Although this language is imprecise, a careful reading of the opinion seems to indicate that reversal was based on the state's failure to place the defendants at the scene of the crime or to prove that they fired the fatal shots.
McNeil v. State, 104 Fla. 360, 139 So. 791 (1932), and Woodward v. State, 113 Fla. 301, 151 So. 509 (1933), are similar to Williams. In McNeil this Court reversed because "the evidence of identity of the accused as being the guilty party [was] not satisfactory to the appellate court... ." 104 Fla. at 361, 139 So. at 792. The state, it appears, had failed to introduce substantial competent evidence to support its assertion that the defendant was present at the scene of the robbery. Since every material element of the offense was not proven, the evidence was insufficient to support a conviction. See Gaetano v. State, 273 So.2d 84 (Fla.4th DCA 1973); Parnell v. State, 218 So.2d 535 (Fla.3d DCA 1969).
In Woodward the Court granted a new trial "in view of the uncertainties appearing in the evidence, and the strong doubt which the evidence raises as to the defendants' guilt... ." 113 Fla. at 302, 151 So. at 509. Again, a close reading of the case leads us to think that Woodward's guilt was not established beyond and to the exclusion of every reasonable doubt.
The district court also relied upon Skiff v. State, 107 Fla. 90, 144 So. 323 (1932), and Fuller v. State, 92 Fla. 873, 110 So. 528 (1926). In Skiff, the Court reversed a rape conviction because the requisite evidence of the victim's character was unconvincing, explaining that "[t]he previous chaste character of the alleged victim is a material fact to be proved [by the state]." 107 Fla. at 91, 144 So. at 323. Here again, the reversal seemed to be predicated on the state's failure to prove every element of the crime. Likewise in Fuller, the Court framed the issue presented by the principal contention on writ of error as "the sufficiency of the evidence to establish the identity of the defendant as the perpetrator of this homicide." 92 Fla. at 874, 110 So. at 528. See also Ming v. State, 89 Fla. 280, 103 So. 618 (1925).
The district court also relied on Lowe v. State, 154 Fla. 730, 19 So.2d 106 (1944), where the Court granted "a new trial because of the inconclusiveness of the testimony offered to establish the essential facts necessary to constitute the crime... ." Id. at 737, 19 So.2d at 110. Like the other "weight" cases which the district court considered, it is probable that Lowe in fact dealt with the state's failure to prove a material fact, which goes to the sufficiency of the evidence.
Our hindsight analysis of the foregoing cases does not mean that all Florida appellate decisions can be reconciled, or that none explicitly relied on evidentiary weight as the sole basis for reversal. Two cases in 1970, Sosa v. Maxwell, 234 So.2d 690 (Fla. 2d DCA 1970), and Smith v. State, 239 So.2d 284 (Fla. 2d DCA 1970), recognized that evidentiary weight could serve as a basis for appellate reversal.
*1125 Sosa v. Maxwell was preceded by Sosa v. State, 215 So.2d 736 (Fla. 1968), where we had reversed the defendants' convictions and remanded for a new trial because "evidence was definitely lacking in establishing beyond a reasonable doubt that the defendants committed murder in the first degree... ." Id. at 737. In Sosa v. Maxwell, the district court denied a writ of prohibition to bar retrial and characterized our earlier reversal as going to the weight, not sufficiency, of the evidence. We later denied certiorari review without opinion. Sosa v. Maxwell, 240 So.2d 640 (Fla. 1970). Our denial of certiorari, of course, was not an adjudication on the merits although it made the district court's Sosa decision the "law of the case."[13] Our original opinion persuasively suggests, however, that the conviction actually was reversed because the state failed to carry its burden of proof  that is, the reversal was based on the insufficiency of the evidence. The district court, it now seems, simply interpreted our decision wrongly.
In Smith v. State, 239 So.2d 284 (Fla. 2d DCA 1970), the district court reversed a conviction for rape. Although there was some evidence to support each element of the offense, the court concluded that the record as a whole disclosed such a possibility of error that a new trial was required. The court stated: "[J]udges have historically granted new trials in the interest of justice where the record, though technically sufficient, raises so much doubt that the conviction cannot in conscience be upheld." Id. at 290 (footnote omitted). On appeal we unanimously reversed. State v. Smith, 249 So.2d 16 (Fla. 1971). Describing the district court's opinion as "novel," we held:
A twelve-man jury evaluated the evidence, including the credibility of the witnesses, presented in this case and found respondent guilty of the offenses charged. On appeal, the District Court determined that the evidence supported the conviction and the trial was free of error. Once that determination was made, the duty of the District Court was to affirm the conviction.
Id. at 18. We believe this approach is the correct one, and we today reaffirm it as a guiding principle of appellate review.

V
As the above analysis indicates, the district court's third category of appellate reversals  where the evidence is technically sufficient but its weight is so tenuous or insubstantial as to require a new trial in the interests of justice  has a questionable historical foundation. The cases relied on by the district court, though confusing and ambiguous in language, can each be seen as involving reversals based on the insufficiency of the evidence. In any event, the formulation in State v. Smith suggests that this third category of appellate reversals, if ever valid in Florida, should now be eliminated from Florida law. Henceforth, no appellate court should reverse a conviction or judgment on the ground that the weight of the evidence is tenuous or insubstantial. Cases now pending on appeal in which a court has characterized the reversal as based on evidentiary weight should be reconsidered in light of our decision today, and under the doctrine of Burks and Greene any retrial of those cases may or may not be barred on the basis of former jeopardy.
Considerations of policy support, if not dictate, this result. Elimination of the third category of reversal accords Florida appellate courts their proper role in examining the sufficiency of the evidence, while leaving questions of weight for resolution only before the trier of fact. Eliminating reversals for evidentiary weight will avoid disparate appellate results, or alternately our having to review appellate reversals based on evidentiary shortcomings to determine whether they were based on sufficiency or on weight. Finally, it will eliminate any temptation appellate tribunals might have to direct a retrial merely by styling reversals as based on "weight" when in fact there is a lack of competent substantial *1126 evidence to support the verdict or judgment and the double jeopardy clause should operate to bar retrial.

VI
One further note is in order regarding the scope of our decision today. Many of the "weight" cases cited by the district court included a statement that a new trial was being ordered "in the interest of justice." By eliminating evidentiary weight as a ground for appellate reversal, we do not mean to imply that an appellate court cannot reverse a judgment or conviction "in the interest of justice." The latter has long been, and still remains, a viable and independent ground for appellate reversal. Rule 9.140(f) of the Florida Rules of Appellate Procedure (1977) provides the relevant standards:
In the interest of justice, the court may grant any relief to which any party is entitled. In capital cases, the court shall review the evidence to determine if the interest of justice requires a new trial, whether or not insufficiency of the evidence is an issue presented for review.
This rule, or one of its predecessors, has often been used by appellate courts to correct fundamental injustices, unrelated to evidentiary shortcomings, which occurred at trial.[14] Retrial in these circumstances is neither foreclosed, nor compelled, by double jeopardy principles. Each situation is unique.
With respect to the special mention of capital cases in the second sentence of the rule, we take that sentence to mean no more than that an additional review requirement is imposed when insufficiency of the evidence is not specifically raised on appeal  namely, that the reviewing court shall consider sufficiency anyhow and, if warranted, reverse the conviction. The consequence of that action would be to bar retrial under the double jeopardy clause.

VII
The application of these principles to our original Tibbs decision does not offer an easy solution to the issue Tibbs presents, for a careful analysis would seem to indicate, candidly, that the opinion was  like the district court's decision in Smith  one of those rare instances in which reversal was based on evidentiary weight.
Tibbs' conviction rested primarily on the uncorroborated testimony of the rape victim, Cynthia Nadeau. Although this testimony alone was legally sufficient to support Tibbs' conviction under Florida law, Thomas v. State, 167 So.2d 309 (Fla. 1964), we reversed his conviction due to a number of "infirmities in the evidence establishing Tibbs as the perpetrator" of the crime. Among these infirmities were several aspects of Nadeau's testimony which cast serious doubt on her believability. In effect, we reweighed the evidence supporting Tibbs' conviction and remanded for a new trial. Judged in light of today's decision, this action was clearly improper. Given the dilemma that error has created, we appear to have several alternatives.
First, we could simply apply the principles enunciated in today's decision, vacate our previous reversal, and affirm Tibbs' conviction. This alternative would prejudice Tibbs for our improper reweighing of the evidence, and for that reason it is not terribly attractive.
Second, we could discharge Tibbs on the ground that he is entitled to this relief from our earlier decision, since we there indicated our serious concern "that Tibbs had nothing to do with these crimes." Tibbs v. State, 337 So.2d 788, 791 (Fla. 1976). Only by stretching the point, however, could we possibly use an "insufficiency" analysis to characterize our previous reversal of Tibbs' convictions.
*1127 A more sensible, third alternative, we believe, is to face squarely the double jeopardy implications of a pre-Burks, appellate reversal based on evidentiary weight. We recognize, of course, that this alternative will merely resolve Tibbs' particular situation, and will have little precedential effect on Florida's law after today's decision. Nonetheless, the interests of justice seem to require that we choose between a retroactive and artificial characterization of our earlier decision (an action we expressly declined to undertake in Greene v. Massey, 384 So.2d 24 (Fla. 1980)), and a retroactive application of double jeopardy principles to an appellate reversal improperly entered.
Despite the broader focus which Justice Sundberg would have us adopt to resolve our dilemma, the fact remains that we cannot fairly conclude from our original opinion that Tibbs' convictions were reversed on the grounds of evidentiary insufficiency. If they were not, then generalized double jeopardy concepts are of no value here, for the United States Supreme Court has now made relatively clear that only those appellate reversals tantamount to an acquittal for insufficient evidence prohibit retrial under Burks. United States v. DiFrancesco, ___ U.S. ___, 101 S.Ct. 426, 433-37, 66 L.Ed.2d 328 (U.S. 1980). Other appellate reversals, including those where sufficient evidence was adduced but a conviction was nonetheless vacated, apparently do not implicate double jeopardy principles.
For these reasons the decision of the Second District Court of Appeal in State v. Tibbs, 370 So.2d 386 (Fla. 2d DCA 1979), is affirmed.
It is so ordered.
ADKINS, OVERTON, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, C.J., concurs in part and dissents in part with an opinion.
ENGLAND, J., concurs in part and dissents in part with an opinion.
BOYD, J., dissents with an opinion.
SUNDBERG, Chief Justice, concurring in part and dissenting in part.
I concur in parts I through V of the majority opinion, but to the remainder I must respectfully dissent. Although the majority concedes that it is difficult if not impossible to characterize and thereby categorize the prior decisions of this Court and the district courts of appeal as to whether a reversal was based on "weight" as opposed to "sufficiency," nevertheless, our prior decision in this cause is dissected to conclude that the reversal was, in fact, based upon the weight and not the sufficiency of the evidence. Two aspects of this trouble me.
First, not only would such an act by the Court in our first decision have been "novel"[1] since there is no legal justification for such a procedure, but it would also have been unlawful. Regardless of how incorrect the conclusion in our first decision may now be perceived, nonetheless, our only authority to reverse the conviction based on the evidence, as an appellate court, was due to its insufficiency. We have consistently recognized that appellate courts may not reweigh evidence. They may only assess its sufficiency. See Herzog v. Herzog, 346 So.2d 56 (Fla. 1977); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976); Westerman v. Shell's City, Inc., 265 So.2d 43 (Fla. 1972). So now to characterize our former action as an erroneous reweighing of the evidence seems improvident at best.
Furthermore, I feel the majority in its efforts at drawing fine lines has lost sight of the central import of the double jeopardy clause. The question posed is simply whether Tibbs will suffer double jeopardy if retrial is allowed  yes or no, why or why not. The answer is ineluctably affirmative. The reason requires an examination of double jeopardy principles. Whether the first trial results in an acquittal, conviction or no verdict, a major purpose of protection against double jeopardy is to prevent the imposition of multiple trials upon the defendant. See Price v. Georgia, 398 U.S. 323, 331, 90 S.Ct. 1757, 1762, 26 L.Ed.2d 300 *1128 (1970). Because of its superior resources, the state must not be allowed to reprosecute the defendant for the same offense until it achieves the desired conviction. See United States v. Scott, 437 U.S. 82, 87, 98 S.Ct. 2187, 2191, 57 L.Ed.2d 65 (1978). The double jeopardy clause is aimed at checking prosecutorial discretion and at preventing abuse of criminal prosecution used as a means of government oppression. These purposes are well summarized in the oftquoted passage from Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957):
The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
Central to the prohibition against double jeopardy is the barrier forbidding a "second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." Burks v. United States, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978) (footnote omitted). The state is not allowed a "second crack" at convicting a defendant when its first effort fell short of the mark because it somehow failed to present the proper evidence. See Swisher v. Brady, 438 U.S. 204, 216, 98 S.Ct. 2699, 2706, 57 L.Ed.2d 705 (1978). This is the rationale underlying Burks which recognizes that an appellate reversal for lack of evidence is tantamount to an acquittal. This is because such a decision by an appellate court constitutes "a decision to the effect that the government has failed to prove its case." Burks, 437 U.S. at 15, 98 S.Ct. at 2149.
Burks takes great care to distinguish the double jeopardy implications of appellate reversals due to trial error and those due to evidentiary insufficiency. Reversal and retrial because of trial error does not contravene double jeopardy principles because such a reversal implies nothing about the guilt or innocence of the defendant, but rather "is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct." Id. at 15, 98 S.Ct. at 2149. The distinction, therefore, is between reversal for a procedural trial error and reversal for a substantive lack of evidence to support the verdict.
The distinction made in Burks parallels that made in United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), decided in the same term as Burks. In Scott, the Supreme Court held that double jeopardy protection could not be invoked by a defendant who had obtained dismissal of two counts of narcotics charges because of prejudice due to preindictment delay by the prosecution. The dismissal had been granted pursuant to a legal defense, not pursuant to a factual defense. The Supreme Court thus developed a definition of acquittal as "`the ruling of the judge, whatever its label, [which] actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.' Martin Linen [United States v. Martin Linen Supply Co., 430 U.S. 564] ... at 571 [97 S.Ct. 1349 at 1354, 51 L.Ed.2d 642]." Scott, 437 U.S. at 97, 98 S.Ct. at 2197. Scott had obtained a dismissal because of a legal and not a factual deficiency in the government's case and was therefore not entitled to double jeopardy protection.
Our task, then, is to decide whether this Court's prior reversal of Tibbs' conviction[2] is more closely related to trial error or evidentiary insufficiency, and whether the reversal is based upon a legal defense or a factual defense. The problem is complicated *1129 by the nefarious creation in Florida case law of a theoretical third reason for appellate reversal, viz., lack of evidentiary weight. Though this Court has never specifically recognized this reason for appellate reversals, at least two district court of appeal opinions have attempted to establish this as a basis for reversal. In Sosa v. Maxwell, 234 So.2d 690 (Fla. 2d DCA), cert. denied, 240 So.2d 640 (Fla. 1970), cert. denied, 402 U.S. 951, 91 S.Ct. 1635, 29 L.Ed.2d 121 (1971), the district court sought to characterize this Court's prior reversal of a murder conviction as being based on lack of evidentiary weight. The district court attempted to avoid the growing trend it recognized in other states, which would not allow retrial after reversal based on evidentiary insufficiency. Id. at 692. Inherent in Sosa is the notion that the distinction the district court sought to establish between sufficiency and weight of the evidence had some meaning in terms of the applicability of the double jeopardy clause. Although the present majority rightly rejects the district court's characterization in Sosa, it paradoxically seeks to imply that the distinction used there is possessed of some significant meaning in terms of double jeopardy protection. We explicitly rejected this in State v. Smith, 249 So.2d 16 (Fla. 1971), when the same district court again attempted to foist this ground for appellate reversal into Florida's case law.[3] The majority properly recognizes the weak support for this distinction and relegates it to history as an anomaly. The rejection of this third category of appellate reversal is supported by our recent decision in McArthur v. Nourse, 369 So.2d 578 (Fla. 1979), which firmly rejected the state's proffer of this basis as a means of avoiding double jeopardy application when we had reversed a murder conviction because the circumstantial evidence failed to rebut a hypothesis of innocence.[4]
Both opinions in McArthur and the present majority note that the United States Supreme Court did not directly address the issue with which we are faced when it decided Greene v. Massey, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), which applied the principles of Burks to the states. Both opinions point to a footnote, 437 U.S. at 26 n. 10, 98 S.Ct. at 2155 n. 10, where the Supreme Court declined to express a view on our specific problem. This lack of expressed opinion is the only significance I can find underlying the sufficiency-weight distinction which the majority develops, at least when the distinction is made at the appellate level. Yet the Supreme Court's refusal to decide whether double jeopardy protections are implicated under such a characterization does not necessarily imply that the principles of Burks and Greene are ipso facto inapplicable to our case. The issue is merely undecided, not uncontrolled by these two cases.
Having surmised that the sufficiency-weight distinction is useless in resolving the case before us, I return to the problem of aligning Tibbs' case on the side of either *1130 trial error or evidentiary insufficiency, or alternatively on the side of either a legal defense or a factual defense. There can be no doubt that our original reversal of Tibbs' conviction was due to this Court's perception that the state had failed to establish the identity of Tibbs as the perpetrator of the murder and rape. This surely belongs in the category of evidentiary insufficiency and not trial error. Likewise, under the Scott distinction, the basis of the reversal was one going to a factual element of the case, identity, and was not a technical legal problem such as a preindictment delay by the prosecution. We were not concerned that Tibbs did not receive a procedurally fair trial; we were concerned with the insufficiency of a factual showing of identification. Under either the Burks or Scott distinction, Tibbs' case is therefore one which deserves protection from double jeopardy.
Finally, I turn to the practical problems that the majority's decision presents. The majority implies that the evidence was legally sufficient[5] to convict Tibbs and that therefore a retrial would not violate the fifth amendment since the state would not be allowed a second attempt at mustering evidence it had failed to produce at the first trial. But we must carry the principle of sufficient evidence through the retrial stage, since it is the basis for avoiding Burks and Greene. We cannot logically allow the state in a second trial to supplement the evidence presented at the first trial, at least not without completely ignoring the themes of the double jeopardy clause here outlined. Since the same evidence must be used, an appellate court would have no choice but once again to reverse a conviction because of our reversal under identical circumstances. This result would follow unless the majority's opinion were construed to reverse our reversal of Tibbs' conviction, in which case we should reinstate the original judgment to avoid double jeopardy problems. A second practical problem is created by the passage of seven years from the date of the crime. If the prosecutrix's identification of the defendant was suspect at the original trial, it is certainly unrealistic to presume on retrial that the passage of so many years will improve her perception.
Both of these problems lead to the conclusion that in spite of the appearance of allowing retrial, the majority has tacitly acquitted Tibbs. Rather than reach this result by tedious circumambulation, I would quash the decision of the District Court of Appeal, Second District, because retrial of the defendant violates the fifth amendment, recognizing that what we did in reversing Tibbs' conviction was to assess some form of factual deficiency in the evidence proving defendant's guilt.
ENGLAND, Justice, concurring in part and dissenting in part.
I concur fully with parts I through V of today's opinion. I dissent, however, from the Court's decision to allow a retrial for Tibbs. Rather than recycle Tibbs through the criminal justice system, I would direct his discharge in the interest of justice. Fla. R.App.P. 9.140(f).
BOYD, Justice, dissenting.
I dissent from the majority opinion allowing re-trial of Delbert Tibbs. It is my view that this result allows the State of Florida to again put petitioner in jeopardy of his life for crimes which the state has already attempted and failed to prove.
When petitioner originally appealed his conviction to this Court, I concurred in the judgment of the Court reversing and remanding for a new trial. Tibbs v. State, 337 So.2d 788, 792 (Fla. 1976) (Boyd, J., concurring specially). My concurring opinion reveals my view, which I still hold, that when an appellate court judges the sufficiency of evidence to support a criminal conviction, it does so upon the whole record, and will therefore not always be bound by such general rules of sufficiency as the one pertaining to the uncorroborated testimony *1131 of a rape victim, stated in Thomas v. State, 167 So.2d 309 (Fla. 1964). While such a rule of evidentiary sufficiency provides that the kind of evidence in question (e.g., uncorroborated identification of rape victim) may, as a matter of law, be sufficient, it does not preclude the appellate court from inquiring, upon the whole record, whether the verdict is supported by competent, substantial evidence. The inquiry is whether a jury of reasonable people could conceivably conclude from the evidence admitted that guilt was proved beyond a reasonable doubt. See, e.g., Griffis v. Hill, 230 So.2d 143 (Fla. 1970). On the original Tibbs appeal, I also expressed my reluctance, since the conviction in my view was being reversed because of the insufficiency of the evidence, to concur in the Court's mandate allowing a new trial.
In McArthur v. State, 351 So.2d 972 (Fla. 1977), where it was clearer that the ground of reversal was evidentiary insufficiency, I dissented from that portion of the Court's decision holding that a new trial was permissible. Id. at 978 (Boyd, J., concurring in part and dissenting in part). When this Court later denied Nadean McArthur's petition to prohibit her retrial, McArthur v. Nourse, 358 So.2d 132 (Fla. 1978) (prohibition denied without opinion), the United States Supreme Court granted certiorari, vacated the order, and remanded for reconsideration in light of Greene v. Massey, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) and Burks v. United States, 437 U.S. 1, 91 S.Ct. 2141, 57 L.Ed.2d 1 (1978). When this Court reconsidered the case, it concluded that the Double Jeopardy Clause would not allow another trial. McArthur v. Nourse, 369 So.2d 578 (Fla. 1979).
Greene and Burks now make clear that when an appellate court finds that a judgment cannot stand because the state has failed to carry its burden of proof, it is a violation of the Fifth and Fourteenth Amendments to allow the state to have another chance. I disagree, moreover, with the majority opinion's statement that "the distinction between an appellate reversal based on evidentiary weight and one based on evidentiary sufficiency was never of any consequence until Burks." The reason that courts, in many of the cases cited by the majority, were so careful to characterize their decisions as reversals for lack of weight rather than legal insufficiency, was because of an understanding that Double Jeopardy disallowed retrial after reversal for insufficiency. See, e.g., Sapir v. United States, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426 (1955); Smith v. State, 239 So.2d 284 (Fla.2d DCA 1970).
The Double Jeopardy Clause was written to prevent precisely what the Court's decision today allows  successive attempts by the state to prove its accusations. This Court's holding that the state failed to carry its burden in petitioner's trial, and that the conviction therefore could not stand, should now be seen as the equivalent of a judgment of acquittal, and be afforded the same finality as a jury verdict to that effect. Petitioner should be forever discharged from the accusations made against him.
Under my reading of the opinion of the Court, if the same evidence is presented against Tibbs on re-trial as was adduced at his first trial, he is found guilty, and he challenges the sufficiency of the evidence, the court having jurisdiction of the appeal will be obliged to hold the evidence sufficient to support a conviction. Yet when the previous judgment was before this Court on appeal, it was held that the same evidence was not enough to support the conviction. This flies in the face of principles of res judicata and, I repeat, violates the Double Jeopardy Clause. The Court is saying that we made a mistake when we reversed the original conviction, that we erred in our evaluation of the question of evidentiary sufficiency. I do not agree that we erred; even if we did, however, it is too late now to correct the error. In my view, the only error was in allowing a new trial.
NOTES
[1] McArthur v. State, 351 So.2d 972 (Fla. 1977).
[2] McArthur v. Nourse, 369 So.2d 578, 581 n. 11 (Fla. 1979).
[3] State v. Tibbs, 370 So.2d 386, 388-89 (Fla.2d DCA 1979).
[4] See Fong Foo v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962); Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904).
[5] The Court reasoned that to hold otherwise would create a "purely arbitrary distinction" between a defendant who received the benefit of a correct lower court decision and one who did not. Burks v. United States, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978).
[6] Id. at 15, 98 S.Ct. at 2149.
[7] McArthur v. Nourse, 369 So.2d 578, 581 n. 11 (Fla. 1979).
[8] Greene v. Massey, 437 U.S. 19, 26 n. 10, 98 S.Ct. 2151, 2155 n. 10, 57 L.Ed.2d 15 (1978).
[9] At the trial level, the weight-sufficiency distinction is apparent in our Rules of Criminal Procedure. We noted in McArthur v. Nourse, 369 So.2d 578 (Fla. 1979) that:

[a] critical distinction has existed at least since 1967, when rules 3.380 (formerly 3.660) and 3.600 of the Florida Rules of Criminal Procedure were adopted. Rule 3.380(a) provides that a motion for judgment of acquittal should be granted if, at the close of the evidence, "the court is of the opinion that the evidence is insufficient to warrant a conviction." In contrast, rule 3.600(a)(2) provides that a motion for new trial shall be granted if the jury verdict is "contrary to law or the weight of the evidence."
Id. at 580 (footnote omitted) (emphases added). Rule 3.600(a)(2) thus enables the trial judge to weigh the evidence and determine the credibility of witnesses so as to act, in effect, as an additional juror. It follows that a finding by the trial judge that the verdict is against the weight of the evidence is not a finding that the evidence is legally insufficient. See Ricketts v. Williams, 242 Ga. 303, 248 S.E.2d 673 (1978), cert. denied, 439 U.S. 1135, 99 S.Ct. 1059, 59 L.Ed.2d 97 (1979).
[10] See, e.g., Chaudoin v. State, 362 So.2d 398 (Fla.2d DCA 1978) (weight and credibility solely within province of jury; appellate court's only function to determine sufficiency as a matter of law); Abbott v. State, 334 So.2d 642 (Fla.3d DCA 1976), cert. denied, 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1064 (1977) (conflicts in evidence and questions about witness' credibility will not justify reversal when evidence is legally sufficient to support conviction); Wetherington v. State, 263 So.2d 294 (Fla.3d DCA 1972).
[11] Spinkellink v. State, 313 So.2d 666 (Fla. 1975); Wooten v. State, 361 So.2d 167 (Fla.3d DCA 1978); Dawson v. State, 338 So.2d 242 (Fla.3d DCA 1976).
[12] One problem, of course, is whether an appellate court actually "reweighs" the evidence in reviewing a trial court's grant or denial of a motion for new trial based on the ground that the verdict is contrary to the weight of the evidence. See note 9 supra. Although Florida case law offers no clear answer, see Mancini v. State, 273 So.2d 371 (Fla. 1973), this case does not require us to address this problem, and we leave its resolution for another day.
[13] Greene v. Massey, 384 So.2d 24 (Fla. 1980).
[14] See, e.g., Wright v. State, 348 So.2d 26 (Fla. 1st DCA 1977); In re Tierney, 328 So.2d 40 (Fla. 4th DCA 1976); Kohn v. State, 289 So.2d 48 (Fla. 3d DCA 1974); Cleveland v. State, 287 So.2d 347 (Fla. 3d DCA 1973). Other cases have granted new trials "in the interests of justice" without explicitly citing the rule. See, e.g., Dukes v. State, 356 So.2d 873 (Fla. 4th DCA 1978); Ferber v. State, 353 So.2d 1256 (Fla. 2d DCA 1978); McClain v. State, 353 So.2d 1215 (Fla. 3d DCA 1977).
[1] State v. Smith, 249 So.2d 16, 17 (Fla. 1971).
[2] Tibbs v. State, 337 So.2d 788 (Fla. 1976).
[3] Some of the basis for the creation of this third type of reversal, evidentiary weight, is exemplified in Smith v. State, 239 So.2d 284 (Fla. 2d DCA 1970), the case which we quashed in 249 So.2d 16 (Fla. 1971). The district court pointed out that though Florida lacks a corroboration requirement for rape convictions, the results in Florida appellate courts do not differ from those states which do have such a requirement. Id. at 286. Since Florida courts could not create a corroboration requirement as Georgia courts had in Davis v. State, 120 Ga. 433, 48 S.E. 180 (1904), because of such precedent as Doyle v. State, 39 Fla. 155, 22 So. 272 (1897), they instead sought to create a separate category of appellate review based on evidentiary weight, implementing a de facto corroboration requirement. The Florida Legislature sought to stem this tide of judicial lawmaking by explicitly rejecting a corroboration requirement for a sexual battery conviction. § 794.022(1), Fla. Stat. (1979). A majority of states has rejected the corroboration requirement which had no basis in common law, though the district court in Smith assumed otherwise. See 15 Duq.L.Rev. 305, 313 (1977); 7 J. Wigmore, Evidence § 2061, at 451 (Chadbourn rev. 1978).
[4] Tibbs' conviction did not rest entirely upon circumstantial evidence, so the standard requiring evidence which is inconsistent with any reasonable hypothesis of innocence set out in Davis v. State, 90 So.2d 629 (Fla. 1956), and with which McArthur v. State, 351 So.2d 972 (Fla. 1977), was concerned, is not here applicable.
[5] This implication is inherent in the majority's position, since the only other stance would hold the evidence insufficient, and Burks and Greene would prevent retrial.