

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0210-09

---

**KELVIN KIANTA BROOKS, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON APPELLANT'S AND STATE'S PETITIONS FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### MCLENNAN COUNTY

---

PRICE, J., filed a dissenting opinion in which MEYERS, JOHNSON, and HOLCOMB, JJ., joined.

### DISSENTING OPINION

By dint of persistence, a plurality of the Court purports to overrule *Clewis*.[1]  The

plurality frames the question as a policy choice, asserting that we granted discretionary

review in order to determine whether "there is a need to retain" factual sufficiency review.[2]

---

[1]

*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

[2]

Plurality opinion, at 1.

But as our opinion less than four years ago in *Watson* demonstrated, the authority to reverse

a conviction on the basis of factual insufficiency has been recognized from the beginning to

be inherent in the appellate jurisdiction of first-tier appellate courts in Texas.[3]  We cannot

simply decide it need not be "retained" any longer absent a change in the constitutional and

statutory provisions that confer that jurisdiction—or else a change in our own long-standing

construction of those provisions.  To be sure, the plurality today would undoubtedly change

those constructions too, if only it could invoke something more substantial than dissenting

opinions to justify it.

## **I.**

The plurality's primary justification for overruling *Clewis* is that, because the

standards for factual sufficiency and legal sufficiency have essentially melded into one, there

is no longer any "meaningful distinction between them that would justify retaining them

both."[4]  But the plurality's premise is flawed.  The plurality begins its analysis with the claim

that *Watson* itself "recognized" that the two standards were "barely distinguishable."[5]  What

*Watson* actually recognized was that the standard for factual sufficiency, as partially

---

[3]

 *Watson v. State*, 204 S.W.3d 404, 406-14 (Tex. Crim. App. 2006).  *See also Clewis*, *supra*,
at 137-44 (Clinton, J., concurring); *Bigby v. State*, 892 S.W.2d 864, 874-75 (Tex. Crim. App. 1994).

[4]

 Plurality opinion, at 2.

[5]

 *Id*. at 8.

reformulated in *Zuniga*,[6] which *Watson* overruled in part, "seems barely distinguishable" from the legal sufficiency standard from *Jackson v. Virginia*.[7] The only difference is that the former views all of the evidence in a "neutral" light rather than, as in the latter, "in the light most favorable to the verdict." But we insisted in *Watson*—as I still do—that "the distinction is a real one[.]"[8]

A holding of legally insufficient evidence—that is, that the evidence is so lacking that federal due process will not tolerate a conviction—has double jeopardy implications.[9] Under the standard established by *Jackson v. Virginia* for deciding whether the evidence satisfies due process, a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution."[10] But this kind of categorical deference is not required of a reviewing court in Texas when conducting a non-due-process review for factual sufficiency. For a reviewing court to view the evidence in a "neutral" light means that it need not resolve every conflict in the evidence,

---

[6]

*Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004).

[7]

*Jackson v. Virginia*, 443 U.S. 307 (1979).

[8]

*Watson v. State*, *supra*, at 415.

[9]

*Burks v. United States*, 437 U.S. 1 (1978); *Greene v. Massey*, 437 U.S. 19 (1978).

[10]

*Jackson v. Virginia*, *supra*, at 326.

or draw every inference from ambiguous evidence, in favor of the defendant's guilt just because a rational jury *could* have. Rational juries can also choose to acquit a defendant even when presented with legally sufficient evidence.[11] Factual sufficiency review recognizes that there may be rare cases in which, though some jury might convict, and it would not be irrational for it to do so, most juries would almost certainly harbor a reasonable doubt given the tenuousness of the State's evidence or the weight and apparent credibility and/or reliability of the exculpatory evidence. Under these circumstances, factual sufficiency review in Texas permits a first-tier appellate court to reverse a conviction and remand for a new trial, in the interest of justice, to grant the defendant a second chance to obtain a jury acquittal.[12]

---

[11]

 *See Watson v. State*, *supra*, at 416 ("The fact is that rational people can disagree whether legally sufficient evidence is persuasive to a level of confidence beyond a reasonable doubt. 'That rational men disagree is not in itself equivalent to a failure of proof by the State, nor does it indicate infidelity to the reasonable doubt standard. Jury verdicts finding guilt beyond a reasonable doubt are regularly sustained even though the evidence was such that the jury would have been justified in having a reasonable doubt.'"*(quoting Johnson v. Louisiana*, 406 U.S. 356, 362 (1972))).

[12]

 "A reversal based on the weight of the evidence . . . can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment." *Tibbs v. Florida*, 457 U.S. 31, 42-43 (1982). This is one of the reasons that reversal for factual insufficiency does not carry double jeopardy implications. Even when a rational jury *could* resolve all conflicts and ambiguities in the evidence in such a way as to justify a conviction, if the appellate court perceives that most juries would not, and (as in Texas) has the authority to act on that perception, it does not place the defendant twice in jeopardy to, at his own instigation, grant him "a second opportunity to seek a favorable judgment." "Giving the defendant this second opportunity, when the evidence is sufficient to support the first verdict, hardly amounts to governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect." *Id*. at 44 (internal quotation marks and citation omitted).

The deference required of the appellate court in a factual sufficiency review is of a different kind than that required by legal sufficiency. It is not, as with legal sufficiency analysis, total deference to the jury's prerogative to resolve all conflicts and ambiguities in the record against the defendant. Instead, it is a qualified deference to the jury's apparent assessment of the weight, credibility, or reliability of the (admittedly legally sufficient) evidence. This deference is important because it respects the jury's fact-finding role at the trial court level.[13] But it is not the absolute deference that legal sufficiency review affords to the jury's resolution of conflicts and ambiguities. It demands that, before a first-tier appellate court may reverse a conviction based upon factually insufficient evidence, it must be able to say, with some objective basis in the record, that the jury's verdict, while legally sufficient, is nevertheless against the great weight and preponderance of the evidence, and therefore "manifestly unjust."[14] This does not grant an appellate judge license to declare the evidence to be factually insufficient "simply because, on the quantum of evidence admitted,

---

[13] None of the cases the plurality cites today, not even *Lancon v State*, 253 S.W.3d 699 (Tex. Crim. App. 2008), has held that the statutory provisions assigning the fact-finding function at the trial level to the jury demands absolute deference from a reviewing court. TEX. CODE CRIM. PROC. arts. 36.13 & 38.04. As we pointed out in *Watson*, these provisions have "peacefully co-existed" with appellate factual review authority "for at least a hundred and twenty-three years." *Watson v. State*, *supra*, at 409. We have used qualifiers such as "due" (*Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)) and "appropriate" (*Clewis v. State*, *supra*, at 136) and "*almost* complete"(*Lancon*, *supra*, at 705) to describe the deference in the factual sufficiency context, to signify that the use of factual sufficiency review to reverse a jury's conviction should be a rare occurrence.

[14] *Watson v. State*, *supra*, at 417.

he would have voted to acquit had he been on the jury. Nor can an appellate court judge declare that a conflict in the evidence justifies a new trial simply because he disagrees with the jury's resolution of that conflict."[15]

> The plurality asserts that this is not a true factual sufficiency review because it:

> is inconsistent with the evidentiary-weight standard described in *Tibbs* (and purportedly adopted in *Clewis*) and with viewing the evidence in a "neutral light," which permit the reviewing court to show **no** deference at all to a jury's credibility and weight determinations and to sit as a "thirteenth juror" without any limitation and to declare that a conflict in the evidence justifies a new trial simply because the reviewing court disagrees with the jury's resolution of conflicting evidence. *See Tibbs*, 457 U.S. at 42.[16]

This passage represents a distorted view of factual sufficiency review. I agree that the citation to *Tibbs* supports the proposition that *when* a reviewing court *does* overturn a jury verdict as too tenuous or against the great weight and preponderance of the evidence, it acts as a thirteenth juror and does not, ultimately, defer to the jury's resolution of weight and credibility.[17] But *Tibbs* does not support the assertion that factual sufficiency is not genuinely factual sufficiency unless the reviewing court sits as a thirteenth juror "without any

---

[15]
*Id*.

[16]
Plurality opinion, at 12.

[17]
"A reversal on [the ground that the verdict is against the weight of the evidence], unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." *Tibbs v. Florida*, *supra*, at 42.

limitation."   It is true that we insist that a simple disagreement with the jury's resolution of conflicting evidence will not support a reversal under a factual sufficiency review.  Not every appellate disagreement with a jury verdict signifies that the jury verdict is "manifestly unjust"—in fact, most do not.  And when that is the case, a reviewing court must decline to exercise its fact jurisdiction to reverse and remand for a new trial.  But this limitation does not mean that when a reviewing court *does* exercise its prerogative to reverse and remand a conviction for factual insufficiency, either because the State's evidence is intolerably tenuous or because the verdict is against the great weight of the evidence, it has not acted as a thirteenth juror.[18]  Obviously, it has.  And that is precisely why *Tibbs* holds that such a reversal carries no double jeopardy consequences.

As for the plurality's claim that a factual sufficiency review that pays any deference at all to the jury's verdict is not really a review of the evidence in a "neutral light,"[19] this is simply inaccurate.  Deference is not an all-or-nothing proposition.  A reviewing court may look to the record *without* the requirement of resolving conflicts and ambiguities in the light most favorable to the jury's verdict and *still* limit the exercise of its power to reverse and

---

[18]  There is no suggestion that Florida law leading up to the Supreme Court's decision in *Tibbs* authorized appellate courts, "without any limitation," to reverse convictions and remand for new trials any time they happened to disagree with a jury's verdict.  *Tibbs v. State*, 397 So.2d 1120 (Fla. 1981).

[19]  Plurality opinion, at 11 ("if a reviewing court is required to defer in any manner to a jury's credibility and weight determinations, then it is not viewing the evidence in a 'neutral light[.]'").

remand for a new trial in the interest of justice, out of deference to the jury's verdict, to those cases in which the State's evidence is *most* tenuous or the weight of the evidence *greatly* preponderates against conviction. The qualified deference that we have said first-tier appellate courts should pay to jury verdicts does not somehow convert factual sufficiency review into legal sufficiency review.

Therefore, even if I agreed that we could simply jettison factual sufficiency review as a matter of policy, I would not accept the plurality's primary justification for doing so.

**II.**

Having declared the standards for legal and factual sufficiency review to be indistinguishable, the plurality finds it necessary to eliminate the latter because a finding of factual insufficiency might necessitate an appellate acquittal.[20] Because I do not accept the premise that the standards are indistinguishable, I do not share the plurality's concern.

**III.**

Next the plurality cites various policy considerations for dispensing with factual sufficiency review. First, the plurality quotes with approval a number of reasons that the Florida Supreme Court listed to explain why it would no longer entertain evidentiary-weight

---

[20] *Id*. at 18 ("We believe that the *Clewis* factual-sufficiency standard with its remedy of a new trial could very well violate double jeopardy principles under *Tibbs* if factual-sufficiency is 'barely distinguishable' from legal-sufficiency review.").

grounds on appellate review.[21]  Insofar as I can tell, however, there was no argument to be made in the criminal appellate courts of Florida that factual review was considered to be inherent in their appellate jurisdiction, as we have said it is in ours.  For this reason, the Florida Supreme Court was free to reject any attempt to raise such a claim purely on policy grounds.  Next, the plurality today endorses an argument from one of the dissenting opinions in *Watson*, a sort of cost/benefit analysis that concludes that factual sufficiency review is simply not worth the candle.[22]  Such policy considerations cannot by themselves serve to trump the constitutional and statutory authority of first-tier appellate courts in Texas to conduct factual sufficiency review, recognized in our case law long before *Clewis* was decided.[23]

## IV.

Any argument to undermine the basis for that constitutional and statutory authority, the plurality has saved for last—perhaps because it can only muster dissenting opinions to support it.  The plurality in fact acknowledges that "[t]here is very little to add to what this Court has already extensively written on a direct-appeal court's constitutional and statutory

---

[21] *Id*. at 20.

[22] *Id*. at 20-22 *(citing Watson v. State, supra*, at 450 (Cochran, J., dissenting)).

[23] *Watson v.* State, *supra*, at 406-12.

authority to apply this factual sufficiency standard in criminal cases."[24] Indeed, the arguments have been aired and rejected in this Court many times in recent years. Even so, the plurality today somehow manages to characterize the question of the jurisdiction of first-tier criminal appellate courts in Texas to conduct factual sufficiency review as one of first impression.[25] But of course this is not an issue of first impression; if it were, there would be no *Clewis* (or, for that matter, *Watson*) to overrule.

And yet overrule *Clewis* the plurality purports to do. Along the way, the plurality fails even to pay lip service to the doctrine of *stare decisis*. *Stare decisis* dictates that "we keep in mind the strong preference for adhering to past decisions[.]"[26] It is better, we have often said, to be consistent than to be right (although I regard this as a rebuttable presumption).[27] Still, we have acknowledged that there are legitimate justifications for overruling established

---

[24] Plurality opinion, at 23.

[25] *See Id.* at 28 ("The issue *thus becomes* whether direct-appeal courts' constitutional jurisdiction to review 'questions of fact,' as also codified in Article 44.25 [of the Code of Criminal Procedure] authorizing direct-appeal courts to reverse a judgment 'upon the facts,' should *now* be construed *for the first time* to mandate direct-appeal courts to sit as 'thirteenth jurors' in criminal cases *contrary to 150 years of practice in civil and criminal cases*. We decline to question over 150 years of criminal and civil jurisprudence in this State and construe constitutional and statutory mandates to review 'questions of fact' to also require direct-appeal courts to sit as 'thirteenth jurors' in criminal cases.") (emphasis supplied).

[26] *Lewis v. State*, 219 S.W.3d 335, 338 (Tex. Crim. App. 2007).

[27] *Id.*; *Roberts v. State*, 273 S.W.3d 322, 334 n.11 (Tex. Crim. App. 2008) (Price, J., concurring).

precedent, and we do not hesitate to do so "if the reasons . . . are weighty enough."[28] I suppose that, were it to address the question head on, the plurality today might argue (judging by its policy arguments for abandoning factual sufficiency review—all of which we have rejected in the past) that factual sufficiency review has become "unworkable."[29] In keeping with the overarching theme of its opinion, the plurality might argue that because the standard for reviewing the evidence for factual sufficiency is now indistinguishable from the standard for reviewing legal sufficiency, and because this lack of distinction might create jeopardy problems, we must not construe the fact jurisdiction of first-tier criminal appellate courts to include a review for factual sufficiency. Because I reject these premises, I would reject any argument that the presumption that consistent-is-better-than-right has been rebutted.[30] The

---

[28] *Lewis v. State*, *supra*.

[29] *E.g.*, *Paulson v. State*, 28 S.W.3d 570, 571-72 (Tex. Crim. App. 2000).

[30] It is sometimes argued that factual sufficiency review is inefficient because it results in so few reversals anyway. *See*, *e.g.*, *Watson v. State*, *supra*, at 448 (Cochran, J., dissenting). But factual sufficiency review operates like a fail-safe mechanism, and one would hope that in any reasonable system of criminal justice it would be rare that ordinary procedural mechanisms would fail to ensure just results. It is also argued that the very existence of factual sufficiency review puts a certain psychological pressure on first-tier appellate courts to find evidence that is legally sufficient nevertheless to be legally *insufficient* in order to avoid jeopardy consequences; after all, the appellate court can always hold the evidence factually insufficient instead. *Id.* at 449. The notion is, as I gather, that without factual sufficiency review, first-tier appellate courts would actually acquit more appellants as a matter of appellate review. *Id.* But I find it difficult to understand why it is better to encourage more appellate acquittals than it is to encourage more appellate reversal-and-remands in which a second jury would be given an opportunity to acquit. *See* n.12, *ante*. If the Court is genuinely concerned about the sanctity of the jury's role as arbiter of the facts, should it not prefer that acquittals come from juries rather than appellate judges?

only thing that arguably makes *Clewis* seem unworkable is this Court's lamentable propensity to grant a State's petition for discretionary review every three or four years to revisit the question whether it is unworkable. The arguments themselves are not new.

To purporting to overrule *Clewis* (and the century of case law that preceded it that exercised fact review jurisdiction to reverse convictions that were built on too tenuous a foundation or were against the great weight of the evidence),[31] and remanding the cause to the court of appeals to revisit its legal sufficiency analysis, I dissent.

Filed:        October 6, 2010
Publish

---

[31]

   *See Watson v. State*, *supra*, at 409-12 (discussing cases from this Court between 1891 and 1940 that reversed on the basis of factual insufficiency).