672 So.2d 62 (1996)
C.J.P., a Juvenile, Appellant,
v.
STATE of Florida, Appellee.
No. 95-161.
District Court of Appeal of Florida, First District.
April 16, 1996.
*63 Cynthia S. Tunnicliff & Marc W. Dunbar, of Pennington & Haben, P.A., Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Giselle Lylen Rivera, Assistant Attorney General; Tallahassee, for Appellee.
MICKLE, Judge.
This is an appeal of an order of disposition in which the appellant, C.J.P., a juvenile, was found guilty of being an accessory after the fact to an aggravated assault by assisting the perpetrator (another juvenile) in avoiding or escaping detention (Count I), and leaving the scene of an accident with injuries (Count III). We affirm as to Count I and reverse as to Count III.
To sustain a conviction in Count I, the state was required to prove that 1) an aggravated assault occurred, 2) C.J.P. knew that an aggravated assault had occurred, and 3) C.J.P. aided the perpetrator with the intent that the offender avoid arrest.
The state's burden in Count III was to prove that 1) C.J.P. was involved in an accident, 2) C.J.P. knew, or should have known, that injuries had occurred, and 3) C.J.P. willfully left the scene of the accident without complying with the requirements of section 316.062, Florida Statutes (1993), which statute imposes a duty on "[t]he driver of any vehicle involved in an accident resulting in injury" to provide certain information and to render reasonable assistance where it is apparent that treatment is necessary.
After carefully examining the record, and recognizing that it is the trier of fact's duty to resolve conflicts in the evidence, we conclude that the state satisfied its burden of proof with competent substantial evidence as to Count I. Accordingly, we affirm that portion of the order. Tibbs v. State, 397 So.2d 1120, 1123 (Fla.1981) (appellate court should not retry case or reweigh conflicting *64 evidence submitted to fact-finder), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); Spinkellink v. State, 313 So.2d 666, 670-71 (Fla.1975), cert. den., 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976); In the Interest of T.M.M., 560 So.2d 805 (Fla. 4th DCA 1990) (entry of judgment of acquittal is appropriate only in those rare instances in which no evidence exists to support entry of a conviction); Williams v. State, 511 So.2d 740 (Fla. 5th DCA 1987) (in determining correctness of trial court's ruling on motion for judgment of acquittal, reviewing court must interpret facts in the state's favor).
Count III is different, however. The state proved beyond a reasonable doubt that C.J.P., the driver of his own vehicle, left the scene of a collision. The driver of another automobile, Ms. Johns, had crashed into a stationary object, a brick mailbox, and had come to a stop in a residential yard while C.J.P. was present. Ms. Johns' vehicle was the only one involved in the "accident." To establish culpability under section 316.027, Florida Statutes (1993), the prosecution had to prove, in addition to C.J.P.'s failure to remain at the scene, that he was "the driver of any vehicle involved in an accident resulting in injury ... of any person." (Emphasis added). The state failed to satisfy its burden as to the element of "involvement." Because C.J.P. was not the driver of the vehicle involved in the accident, we need not address what the evidence showed concerning victim injury.
AFFIRMING order as to Count I and REVERSING order as to Count III.
VAN NORTWICK, J., concurs.
BENTON, J., concurs in part and dissents in part with written opinion.
BENTON, Judge, concurring in part and dissenting in part.
I concur as to count III but respectfully dissent as to count I. On count I, the prosecution had to prove beyond a reasonable doubt "that 1) an aggravated assault occurred, 2) C.J.P. knew that an aggravated assault had occurred, and 3) C.J.P. aided the perpetrator with the intent that the offender avoid arrest." Ante, p. 63.
In a hearing on a petition alleging that a child has committed a delinquent act or violation of law, the evidence must establish such findings beyond a reasonable doubt.
§ 39.052(1)(b)1., Fla.Stat. (Supp.1994). In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. D.H., 340 So.2d 1163, 1166 (Fla.1976). The evidence adduced did not establish beyond a reasonable doubt that "C.J.P. knew that an aggravated assault had occurred."
The events which gave rise to delinquency proceedings transpired on May 26, 1994, the night of a high school dance. Appellant C.J.P. and another young man (here called S.W. for stick wielder) were driving separate cars when a white Camaro drove rapidly past, then slowed down, ending up alongside. The occupants of the Camaro taunted S.W., sped away, made a U-turn, and cut directly in front of C.J.P., nearly running C.J.P.'s car off the road, or so S.W. and C.J.P. testified.
When S.W. and C.J.P. reached their destination, the Camaro pulled over some fifty feet away. One of the Camaro's occupants threw an object at S.W.'s car, inspiring S.W. to inquire "What's your problem?" At this juncture, S.W., M.H., and maybe others climbed into C.J.P.'s car, and, with C.J.P. at the wheel, chased the Camaro for five or ten minutes before losing sight of it. About five minutes after they had given up the chase and gotten out of C.J.P.'s car, S.W., M.H., and C.J.P. saw another white Camaro. Mistaking it for the car that had just eluded them, they got back into C.J.P.'s Integra and followed it, initially staying behind intervening cars.
After the Camaro stopped in a cul-de-sac, C.J.P. parked some distance away. S.W. got out of the Integra, found a stick which he picked up, approached the Camaro, waved the stick, and yelled. In this white Camaro innocently sat Ilaina Johns (the driver) and her prom date. While S.W. did testify that "if they would have gotten out, something would have happened," just what is not clear from the evidence. If Ms. Johns had gotten out of her car, S.W. or a companion might *65 well have realized that they had followed the wrong Camaro; the testimony was that the first Camaro's occupants were all male. As it happened, the evidence was clear, neither Ms. Johns nor her date emerged from the car before C.J.P. and the others left.
Alarmed at S.W.'s antics, Ms. Johns' reaction was to step on the accelerator. After passing C.J.P.'s stationary car, she lost traction on a pile of brush and hit a one-ton masonry structure on which a mailbox was mounted. At this turn of events, C.J.P., S.W., and M.H. got back into C.J.P.'s car and drove away, headlights out. Coming outside only after his mailbox had been knocked over, Mr. Doucette testified, he found Ms. Johns distraught, but professing to be uninjured.
Only if evidence had established beyond a reasonable doubt that C.J.P. "knew when he extended aid or assistance to [S.W.] ... that [S.W.] had committed a felony," Whorley v. State, 45 Fla. 123, 33 So. 849, 850 (Fla.1903), would the finding of delinquency on this ground have been proper. Gawronski v. State, 444 So.2d 490, 491 (Fla. 2d DCA 1984); Ruiz v. State, 388 So.2d 610, 612 (Fla. 3d DCA 1980), review denied, 392 So.2d 1380 (Fla.1981); 22 CJS Criminal Law § 141 ("Knowledge that a felony has been committed is essential to constitute one an accessory after the fact."). See F.M. v. State, 622 So.2d 71, 72 (Fla. 2d DCA 1993). Simple assault is not a felony. S.W.'s conduct was not felonious unless he was guilty of aggravated assault. The State proved beyond a reasonable doubt that C.J.P. helped S.W. leave the cul-de-sac, but not that he did so "knowing that [S.W.] had committed a felony." § 777.03, Fla.Stat. (1993).
Insofar as pertinent here, aggravated assault entails use of "a deadly weapon." § 784.021(1)(a), Fla.Stat. (1993). A stick may be a deadly weapon for purposes of the statute only if "likely to cause great bodily harm because of the way it is used during a crime." D.C. v. State, 567 So.2d 998, 1000 (Fla. 1st DCA 1990); Forchion v. State, 214 So.2d 751, 752 (Fla. 3d DCA 1968) (aggravated assault conviction reversed where defendant hit victim with "`what looked like part of a broom handle' approximately two feet in length" thrown from a distance of twelve to fifteen feet).
The stick S.W. brandished did not come in evidence. Its length was put by one witness at half the length of a baseball bat and by another at twenty to twenty-four inches. Its diameter was said to be bigger than a broom handle's, somewhat larger than that of a baseball bat handle, the same as a baseball bat handle's, the same as that of a cardboard spindle for toilet paper, and the same as that of a policeman's flashlight handle.
C.J.P. had no information about the stick's tensile strength or any other attribute not visible from a distance. When he saw S.W. pick up a stick and wave it menacingly, C.J.P. had no reason to believe the stick was likely to cause bodily harm because of the manner in which it was used, or even that it could have caused great bodily harm if a Camaro door had opened and S.W. had actually hit somebody with it. No testimony established whether the stick was heavy or light, green or punk. On this record, there is at the very least reasonable doubt that C.J.P. knew that S.W. wasif, indeed, he was guilty of a felony when they drove away from the fallen mailbox.
I would reverse and remand with directions to discharge C.J.P.