EMAS, J.
K.S.H. appeals an order placing him on probation, following an adjudicatory hearing in which he was found to have committed a misdemeanor battery.[1] K.S.H. asserts that the trial court erred in denying his judgment for dismissal at the close of the evidence. We affirm.
At trial, it was undisputed that K.S.H. struck the victim, Neltha Clerisier. The defense asserted, however, that K.S.H. was justified in using force in the defense of his sister, Ketley. Three witnesses testified at the trial: Dr. Clifton Hamilton (a teacher at the school), Isabel Samuel, (the investigating police officer) and Neltha. The evidence introduced at trial, viewed in a light most favorable to the trial court’s finding of delinquency, Banks v. State, 732 So.2d 1065 (Fla.1999), established the following:

Testimony of Neltha:

Neltha, K.S.H., and Ketley all attend the same school. Neltha testified that on January 31, 2010, she and K.S.H. had an argument at school. During the argument, K.S.H. “chinned”[2] Neltha, and in response Neltha shoved K.S.H. The next day, February 1, Neltha was on her way to class when she was stopped by KS.H.’s sister, Ketley. Ketley and Neltha began to argue. As the argument grew louder, a *124 crowd of students began to form around them. The argument was soon broken up and Ketley walked away, accompanied by her friends. Neltha then began running toward the bathroom (which she testified she needed to use), but the bathroom was in the same general direction of Ketley. One of Neltha’s friends thought Neltha was running after Ketley, and grabbed Neltha. At the same time, Dr. Hamilton came up and grabbed Ketley. Also at this time, K.S.H. arrived at the scene. Neltha testified that K.S.H. “thought I was running towards his sister to go hit her. And that’s when he punched me, I guess.”[3]

Testimony of Dr. Hamilton:

Dr. Hamilton testified that when he first arrived on the scene, he saw Neltha waving her arms and screaming at Ketley in the hallway. The two girls were surrounded by a group of students. Dr. Hamilton grabbed Ketley by the arm to move her away from Neltha, at which point he saw that Neltha stopped screaming and put her hands down. As Dr. Hamilton was walking away with Ketley, he looked back and saw Neltha with her arms down, not shouting, and not moving. He then saw K.S.H. running towards Neltha. K.S.H. threw a “running punch” by raising one leg, lunging at Neltha, and punching her without slowing down. K.S.H. used his right hand and punched Neltha in the left eye. When K.S.H. threw the running punch, Neltha was near the bathroom and was more than thirty feet away from Ketley. Dr. Hamilton did not have any concern that Neltha was going to attack Ketley because of the distance separating them.

Testimony of Officer Samuel:

Officer Samuel testified that she interviewed K.S.H. after the incident and he wrote out a statement indicating that he was standing by his sister when Neltha tried to “rush me and my sister so I try to stop her so I put my hand in front of her so she fell.” Officer Samuel testified that after she reviewed KS.H.’s written statement, she inspected K.S.H.’s hand and noticed that it was swollen. At that point, K.S.H. acknowledged that he hit Neltha. Fire Rescue was called to address KS.H.’s injury, and determined that it was not broken, but required ice to reduce the swelling.
On appeal, K.S.H. asserts that the trial court erred in denying his motion for judgment of dismissal, arguing that the State failed to adequately rebut the evidence of defense of others as established through the testimony of Neltha and KS.H.’s written statement. We review de novo the trial court’s decision denying the motion for judgment of dismissal, Troy v. State, 948 So.2d 635 (Fla.2006), but we view the evidence, and all reasonable inferences from the evidence, in a light most favorable to the State (as the prevailing party), to determine whether there is substantial, competent evidence to support the factfinder’s determination. Banks, 732 So.2d at 1067.
Section 776.012, Florida Statutes (2010), provides:
A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other’s imminent use of unlawful force.
Ordinarily, whether the use of force (and whether the amount of force used) was justified is a question to be *125 determined by the trier of fact. Fowler v. State, 921 So.2d 708 (Fla. 2d DCA 2006). Once the defense produces evidence supporting a claim of defense of others, the State is required to rebut this defense by proving beyond a reasonable doubt that the actions were not taken in justifiable defense of another. S.R. v. State, 11 So.3d 442 (Fla. 3d DCA 2009). If the State fails to produce legally sufficient evidence to rebut the prima facie evidence of defense of others, the court must grant a motion for judgment of dismissal. E.A.B. v. State, 933 So.2d 676, 679 (Fla. 2d DCA 2006). The evidence in “rebuttal” of the defense can come from the testimony of the State’s witnesses during its case-in-chief, and from the reasonable inferences flowing from that testimony.[4] Diaz v. State, 387 So.2d 978 (Fla. 3d DCA 1980); K.W.S. v. State, 924 So.2d 80 (Fla. 5th DCA 2006).
The defense of others defense permits the use of force only “to the extent that .the person reasonably believes that such conduct is necessary to defend ... another against the other’s imminent use of unlawful force.” § 776.012, Fla. Stat. (2010). (emphasis added). Thus the trier of fact must necessarily determine whether the use of any force was justified under the circumstances, and, if so, whether the amount of force used was justified under the circumstances. See Fla. Std. Jury Instr. 3.6(g) (“The danger facing the defendant need not have been actual; however, to justify the use of non-deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force. Based upon appearances, the defendant must have actually believed that the danger was real.”) (emphasis added).
Had Neltha been the only witness to testify at the adjudicatory hearing, KS.H.’s claim might be well taken. However, K.S.H. largely ignores the testimony of the two other witnesses; this testimony supported a finding that the State proved beyond a reasonable doubt that K.S.H. was not justified in the amount of force used, or that K.S.H. was not justified in the use of any force at all.
For example, in his written statement following the incident, K.S.H. indicated that he merely put his hand in front of Neltha to stop her. Officer Samuel testified that when K.S.H. was questioned about his swollen hand, however, K.S.H. acknowledged that he hit Neltha. Dr. Hamilton testified that K.S.H. threw a “running punch,” striking Neltha in the eye. Dr. Hamilton also testified that, before K.S.H. began running at Neltha, Nel-tha already had put her arms down, was not shouting, and was not moving. This evidence, if believed, certainly would support a finding that, under the circumstances, K.S.H. used excessive force in defense of Ketley.
In fact, given Dr. Hamilton’s testimony that Ketley and Neltha were more than thirty feet apart when K.S.H. punched Neltha, the trier of fact could reasonably have concluded that the State established beyond a reasonable doubt that, under the circumstances, K.S.H. was not justified in the use of any force.
This case is thus distinguishable from the cases relied upon by K.S.H.: S.R. v. State, 11 So.3d at 442, M.P.W. v. State, 702 So.2d 591 (Fla. 2d DCA 1997), and D.M.L. v. State, 773 So.2d 1216 (Fla. 3d DCA 2000). In each of these cases, the evidence establishing the defense was neither controverted nor rebutted by the State.
*126 In the instant case, by contrast, the State presented competent, substantial evidence to rebut the claim of defense of others, and proved beyond a reasonable doubt that K.S.H. had committed misdemeanor battery. The evidence was legally sufficient and it was the province of the trier of fact to resolve the conflicts in the evidence and determine the weight to be given to each witness’ testimony. As the Florida Supreme Court observed in Tibbs v. State, 397 So.2d 1120, 1123 (Fla.1981), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982):
As a general proposition, an appellate court should not retry a case or reweigh conflicting evidence submitted to a'jury or other trier of fact. Rather, the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment. Legal sufficiency alone, as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal.
Affirmed.

. The petition alleged K.S.H. committed a felony battery, but the trial court found that the evidence sustained a finding of delinquency on the lesser included offense of misdemeanor batteiy. Fla. R. Juv. P. 8.110(h).

. "Chinning” was described as the act of one person placing his finger under the chin of another, and then flicking that person's chin.

. There was no objection to Neltha testifying about K.S.H.'s state of mind or about why K.S.H. hit her.

. K.S.H. presented no witnesses or other evidence during the hearing. The evidence of his defense came from the testimony of the state’s three witnesses.