# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-0701
_____

RUEZ PALEA DEALDORRETT
HICKS,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____


On appeal from the Circuit Court for Bay County.
Shonna Young Gay, Judge.


July 17, 2024


B.L. THOMAS, J.


Appellant appeals his judgment and sentence for two counts of second-degree murder, one count of robbery with a firearm, and one count of burglary. He argues the trial court erred by denying his motion for judgment of acquittal on the charge of robbery with a firearm, by proceeding against him without entering a written competency order, and by imposing the costs of prosecution. As to the third issue, we affirm for the reasons stated in *Parks v. State*, 371 So. 3d 392 (Fla. 1st DCA 2023). As to the other issues, we affirm for the reasons explained below.

*Pre-Trial*

Defense counsel filed a motion seeking a competency determination, alleging that he had reason to believe that Appellant might be incompetent "[b]ased upon information obtained during the course of representation." The trial court granted the motion and appointed an expert to evaluate Appellant. The record shows that the expert filed his report with the court, and it indicated that Appellant was competent to proceed to trial. The court never conducted a competency hearing, nor did it enter a written order finding Appellant competent to proceed.

*Trial*

In 2021, two dead bodies were discovered in a home in Panama City Beach. The victims (the homeowner and his cousin) were remodeling the home. While the home was unoccupied, Appellant, who was armed with a firearm, entered with the intent to commit a theft. He was homeless and went into the home to find something that he could steal and sell. But the victims surprised Appellant by returning while he was still there. Appellant shot both men. One victim was left to die on the front porch after Appellant ripped a wallet from the victim's back pocket, tearing the victim's pants. The other victim was shot as he attempted to retreat.

Appellant then used one of the victim's cash app cards at a Dollar Store. Based on a notification to the victim's mobile phone, law enforcement investigators promptly identified Appellant as the murderer. A friend of Appellant hid the firearm used during the crimes, and was later arrested as an accessory after the fact to the crimes, but later cooperated with law enforcement.

After being advised of his rights, Appellant participated in police interviews where his story repeatedly evolved. He claimed the victims asked him to help them with the remodel work on the home, but he only picked up trash. He then asked them if he would be paid but the victims just "changed the subject." Appellant then claimed that for no reason the "smaller" victim punched Appellant and the gun shot the victim.

Appellant admitted to snatching the victim's wallet and using the cash app card from the wallet to purchase a "Snapple, a bag of chips and a bag of candy."

A detective then confronted Appellant with the evidence that a video camera in the neighborhood showed Appellant walking on the street to the victim's home at 6:58 pm, and "ten minutes later shots are fired." After this confrontation, the detective then told Appellant the most likely scenario was that Appellant burglarized what he thought was a vacant home, the victims unexpectedly arrived, and Appellant shot them.

To this Appellant responded that "I never meant to kill anybody."

Appellant then stated that he was only looking for cash, a place to sleep, when the victims unexpectedly arrived. They were angry at finding him there. Appellant then said the victims told him this was private property and he could be arrested. Appellant then claimed he inadvertently shot the smaller victim after the smaller victim hit him. He claimed he really didn't mean to shoot, but the smaller victim hit him. He then claimed that he really did not know how he shot the larger victim.

The detective then confronted Appellant with the evidence that the victims' gun wounds were "precise," and "dead center in both of them," and there "were not a lot of wasted rounds," as Appellant "pretty much hit his target." The detective then asked if Appellant panicked and shot the larger victim to eliminate a witness to the murder of the smaller victim, to which Appellant replied he "probably did."

The detective then asked Appellant why, if the shooting was a reaction to the confrontation with the victims, did Appellant take one of the victim's wallets? To which Appellant responded, to "see if he has money." Appellant repeatedly denied any intent to commit a robbery, despite taking the wallet, and then confessed that he was "wanting some money." He again denied any intent to kill the victims or any intent to plan a robbery.

Appellant stated that one of the dying victims asked Appellant to help him. But Appellant admitted that the victim fell

face down, and Appellant rolled him over to take his wallet. Appellant then admitted he was not truthful when he earlier stated he had spoken to the victims about working for them and was then assaulted. He also admitted that he was leaving the home with tools and other possessions when the victims arrived and confronted him. He told the detective that he had his gun in his hand while trying to steal items from the home. The smaller victim told him to drop the property. He admitted to then shooting the smaller man from a "real close" range. Appellant stated he kept the gun "in his hand" in his pocket when he entered the victim's home.

The Medical Examiner testified that both men were shot at close range, under three feet of distance. One victim had been shot in the face and the chest. Both victims died within one minute, and the bullets pierced one victim's heart and other victim's blood vessels causing immediate and significant loss of blood.

After the State rested, defense counsel suggested the court inquire of Appellant whether he intended to testify. The court asked Appellant eight questions regarding his choice to testify, his satisfaction with counsel's advice and representation regarding Appellant's right to choose to testify and related matters. Defense counsel then asked Appellant several questions. Appellant had no difficulty answering the questions. He did initially change his mind about testifying after stating he did not wish to testify. After further questioning from the court and explanations about the State's right to cross examine Appellant regarding his criminal history and other matters, Appellant ultimately decided he would not testify. Defense counsel informed the court and the State that this decision was consistent with defense trial strategy and what counsel had discussed with Appellant. Defense counsel at no time during the trial indicated that Appellant was not competent to proceed or not competent to decide to testify. Nothing in the transcript, defense counsel representations, or Appellant's conduct during the trial revealed any evidence of Appellant's incompetence to proceed during the trial.

Defense counsel moved for judgments of acquittal on the charges of second-degree murder, asserting that the evidence could only prove manslaughter. Counsel made the same motion on the

4

charge of robbery with a firearm and burglary with a firearm, asserting that the evidence could only prove theft and trespassing. The trial court denied the motions.

The jury convicted Appellant of all counts, two counts of second-degree murder, one count of robbery with a firearm, and one count of burglary while armed. The jury answered all firearm interrogatories in the affirmative, finding that Appellant possessed a firearm and discharged the firearm during the murders.

*Analysis*

On appeal, Appellant argues the evidence was legally insufficient to sustain the conviction of robbery. Viewing the evidence in the light most favorable to the State, as required, and all reasonable inferences drawn therefrom, as we must, we disagree. *See Tibbs v. State,* 397 So. 2d 1120, 1123. (Fla. 1981). And as the supreme court held in *Tibbs,* appellate courts are not at liberty to reweigh evidence; legal sufficiency alone is to be determined. *Id.* And here, there is more than sufficient evidence to uphold the verdict where Appellant admitted he intended to burglarize the home, while armed, and take any possessions he could carry away. He also admitted to turning over the victim's body to take the wallet so forcefully he ripped the victim's clothing. Thus, as the State correctly asserts, the jury could reasonably infer that Appellant murdered the victim to take his wallet, and his intent can be inferred from these facts.

The crime of robbery is committed when a person commits a theft and during the commission of the crime uses "force, violence, assault, or putting in fear." § 812.13(1), Fla. Stat. (2020). The evidence could convince a reasonable jury that Appellant intended to murder the victim in order to take his property, his wallet, either during the "course of the taking" as it occurred "prior to, contemporaneous with, or *subsequent* to the taking of the property, and if it and the act of taking constitute a continuous series of acts or events." § 812.13(3)(b), Fla. Stat. (2020) (emphasis added). Thus, we reject Appellant's argument on appeal on this issue.

Appellant also argues on appeal that the trial court committed fundamental error by conducting the trial "when presented with

5

reasonable grounds to believe Appellant was not competent" to be tried. Again, we disagree. As we very recently held in *Awolowo v. State,* where a trial court authorizes a competency evaluation, and the evaluation report determines a criminal defendant is competent to stand trial, there is no legal error, much less fundamental error, where a further hearing on the report is not conducted but no evidence or argument is presented that the defendant is not competent, and our review of the trial record reveals no indication raising any reasonable doubt of the defendant's competency:

> Fundamental error will only arise from a trial court's failure to make a determination of the defendant's competency when the record shows there were reasonable grounds to believe that the defendant was incompetent to proceed. It is the violation of the right not to be tried when there are reasonable grounds to question the defendant's competency—not the right to have a hearing and competency determination—that deprives a defendant of due process. And so, when the record does not show reasonable grounds for the trial court to have believed that the defendant was incompetent to proceed, the trial court does not fundamentally err by failing to hold a competency hearing and failing to enter a written order on the defendants' competency. This is so even if the trial court has ordered an expert evaluation of the defendant's competency.

2024 WL 3352479, *6 (Fla. 1st DCA July 10, 2024). Here, Appellant makes no argument, nor could he, that there were reasonable grounds to doubt his competency to stand trial. As we held in *Awolowo,* when a motion to determine competency is granted, and an expert then determines a criminal defendant is competent, the absence of a hearing on the motion and a written order as to the defendant's competency do not constitute fundamental error, when there is no *evidence* that a defendant is not competent, defense counsel provides no further argument or presentation to the contrary, and our review of the record does not reveal any reasonable grounds to find a defendant was not competent to stand trial.

Here there is none.

The judgment and sentence on appeal are AFFIRMED.

ROWE, J., concurs; BILBREY, J., concurs in result with opinion.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

BILBREY, J., concurring in result.

I agree with the majority opinion on the denial of the judgment of acquittal and the cost of prosecution issues. On the competency issue, but for our recent decision in *Awolowo v. State,* 2024 WL 3352479 (Fla. 1st DCA July 10, 2024), I would accept the State's concession of error and remand for a nunc pro tunc competency determination. Here, like in *Awolowo*, fundamental error occurred when Appellant was tried without the trial court first making an independent competency determination. *See id.* (Bilbrey, J., dissenting). However, although I respectfully disagree with the majority opinion in *Awolowo*, I believe that I am now bound by it. *See Sims v. State*, 260 So. 3d 509, 514 (Fla. 1st DCA 2018). I therefore concur in the majority's decision to decline to remand for a competency determination.

---

Jessica J. Yeary, Public Defender, and Kathryn Lane, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, Michael L. Schaub, Assistant Attorney General, Tallahassee, for Appellee.