NORTHCUTT, Judge.
Robert Garcia, Jr., and four others planned and undertook a home-invasion robbery. But the endeavor went wildly awry, and by the end of it, two of the perpetrators were dead. For his part, Garcia was tried before a jury and convicted of armed home-invasion robbery, second-degree felony murder, and aggravated battery, and he filed this appeal. We reverse the felony murder conviction; otherwise we affirm.
The evidence at trial reflected that Garcia was one of five friends who were hanging out one afternoon, socializing and doing cocaine. At one point, one of them complained that a man named Cody Foeh-ner had sold him substandard drugs. As the afternoon progressed, the topic came up again. Eventually, the group decided to rob Foehner of drugs and cash. They borrowed a car and some guns and went to the home Foehner shared with his girlfriend. Two of the men, including Foeh-ner’s disappointed customer, knocked on the door and were invited in. They immediately attacked Foehner with a stun gun and subdued his girlfriend; then they let their confederates into the home. One of the latter, Aaron Mayo, was armed with a short-barrel shotgun fitted with a pistol grip.
As described by the State’s witnesses, chaos ensued. The intruders set upon Foehner, beating and tasing him and demanding the location of his safe, while one or two of the men dragged the girlfriend to another room to look for it. Foehner struggled against his tormentors to little avail — until his pit bulls joined the fray and attacked them. Someone shot one of the dogs, whereupon Foehner began resisting with renewed vigor. Mayo, the one with the short-barrel shotgun, attempted to subdue Foehner. Wielding the gun like a hammer, he grasped its barrel and struck Foehner’s head with the pistol grip. When he did so, the gun discharged.
The gunshot struck Mayo’s thigh. He hopped on one foot and screamed that he had shot himself. At that, the robbers panicked. They rushed from the home and sped away in the borrowed car, Mayo bleeding in the back seat. A state trooper observed the speeding car and gave chase. The trooper pursued the car until he found it stopped beside the road. It was abandoned save for Mayo, who had bled out from a ruptured femoral artery and lay dead on the back seat.
*426 When Mayo’s compatriots left the car, they fled on foot through some woods to a canal. The men plunged into the water and swam for the other bank. Once there, one of them stopped. Wet and exhausted, he lay on the ground until a police canine found him. Garcia and another of the robbers were apprehended shortly thereafter. The hunt for the last perpetrator ended nine days later, when he was found floating in the canal, drowned.
As mentioned, we reject most of Garcia’s assertions on appeal. By and large, the rulings he complains about either were not erroneous or were harmless, and we affirm on those points without further discussion. The one exception is Garcia’s conviction on the second-degree felony murder charge, which was predicated on Mayo’s death. Garcia contends that this self-inflicted death did not constitute second-degree felony murder. Although this argument was not raised at trial, we agree with Garcia’s assertion that the felony-murder conviction was fundamental error.
Generally, to be cognizable on appeal an argument must be first raised in the trial court. F.B. v. State, 852 So.2d 226, 229 (Fla.2003). “The requirement of contemporaneous objection ... not only affords trial judges the opportunity to address and possibly redress a claimed error, it also prevents counsel from allowing errors in the proceedings to go unchallenged and later using the error to a client’s tactical advantage.” Id. (citing J.B. v. State, 705 So.2d 1376, 1378 (Fla.1998)). The preservation requirement is excused for a narrow class of errors deemed to be fundamental. One such error occurs when an accused is convicted even though the evidence is insufficient to show that a crime was committed at all. Id. at 230. That is what happened here.
Garcia was charged with second-degree felony murder. We start with the language of the statute defining this crime. “Because Florida does not recognize common law felonies, no felony can exist under Florida law unless it is created by a valid statute properly approved by the legislature.” State v. Waiso, 788 So.2d 1026, 1029 (Fla. 2d DCA 2001). Second-degree felony murder is defined by section 782.04(3), Florida Statutes (2008), which provides as follows: “When a person is killed in the perpetration of, or in the attempt to perpetrate, any” of a list of felonies, including home-invasion robbery, “by a person other than the person engaged in the perpetration of or in the attempt to perpetrate such felony, the person perpetrating or attempting to perpetrate such felony is guilty of murder in the second degree....”
Applying the statute to the facts of this case, a person (Mayo) was killed in the perpetration of a home-invasion robbery. But he killed himself; he was not killed “by a person other than the person engaged in the perpetration of ... such felony.” Tracing the evolution of the felony murder statutes, the supreme court has concluded that “second-degree felony murder as defined in section 782.04(3) requires that the killing be done by a nonprincipal.” State v. Dene, 533 So.2d 265, 270 (Fla.1988). The language of the statute at issue in Dene was essentially the same as the 2008 version applicable in this case, the only change being the list of qualifying felonies. Compare Dene, 533 So.2d at 268 (quoting § 782.04(3), Fla. Stat. (1975)), with § 782.04(3), Fla. Stat. (2008).
The State impliedly acknowledged this nuance at trial, when the prosecutor argued that the shotgun was discharged in Foehner’s struggle with Mayo. Using the standard instructions, the trial court instructed the jury, in part, that the crime was committed if “the person who actually *427 killed Aaron Mayo was not involved in the commission or the attempt to commit the home invasion robbery or burglary.” We view the evidence in the light most favorable to the State, resolving all conflicts and reasonable inferences in favor of the verdict. See F.B., 852 So.2d at 230 (citing Tibbs v. State, 397 So.2d 1120, 1128 (Fla.1981)). Even so, there was no testimony or other evidence to show that Foehner touched the trigger in a struggle for the gun or that, in any other way, he caused the gun to fire. The evidence was clear and undisputed that Mayo caused the gun to discharge by striking it against Foeh-ner’s head.
Because there was no evidence that Mayo was killed by a nonprincipal to the underlying felony, Garcia’s conviction for second-degree felony murder was fundamental error. Therefore, we reverse Garcia’s conviction and sentence for that offense.
Affirmed in part; reversed in part.
SILBERMAN, C.J., and DAVIS, J., Concur.